**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT**

| | |
|---|---|
| **ERIC NATHAN,** *et al.,* <br><br> on behalf of themselves and all others similarly situated, <br><br>          Plaintiffs, <br><br>   vs. <br><br> **WHIRLPOOL CORPORATION,** <br><br><br>          Defendant. | **Case No. 3:19-cv-00226-WHR** <br><br> **Judge Walter H. Rice** <br><br> **Magistrate Judge Michael J. Newman** <br><br> <u>**AMENDED CLASS ACTION COMPLAINT**</u> <br> **JURY DEMANDED** |

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1.  Plaintiffs Eric Nathan, Chris Smith, William Johnson, Richard Tschernjawski, and Judith Anderson bring this proposed class action on behalf of themselves and similarly-situated purchasers of KitchenAid blenders challenging the conduct of Defendant Whirlpool Corporation ("Defendant" or "Whirlpool") in the marketing and sale of two series of blenders, KitchenAid Pro Line Series Blenders and High Performance Series Blenders (the "Blenders"), which are intended for household use only. The Blenders are incapable of reaching Whirlpool's horsepower representations for the Blenders at any time during household use. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

2.      Whirlpool, doing business as and using the trade name KitchenAid ("KitchenAid"), manufactures, markets, and sells a variety of blenders, including the Blenders. Defendant charges a premium for the Blenders based on the misrepresented horsepower capabilities during household usage.

3.      Whirlpool represents on its website (www.kitchenaid.com), in its marketing materials, and on its product packaging that the Blenders have a specific power output, quantified in horsepower, when in fact it is impossible to reach even close to that horsepower during household usage.

4.      Whirlpool distinguishes the Blenders from competitors' blenders as well as its own less expensive household models by promoting the Blenders as being particularly powerful in terms of the represented horsepower, thereby encouraging consumers to pay considerably more for the Blenders.

5.      Whirlpool does so both with general claims such as having "heavy duty" motors and "produc[ing] more power than the leading competitors," and with specific quantifiable factual claims of having 3.5 peak horsepower (Pro Line) and 3.0 peak horsepower (High Performance).

6.      But these horsepower representations are inaccurate, misleading, and materially overstate the Blenders' true operating horsepower. Indeed, it is not possible for the Blenders to operate at 3.5 or even 3.0 horsepower when plugged into a standard 120-volt, 15 or 20 amp outlet in residential homes found in the United States.

7.      As Defendant well knows,[1] the Blenders are not designed to, nor can they, operate continuously at peak horsepower. Peak horsepower represents the maximum horsepower

---

[1] Whirlpool previously settled a similar class action lawsuit alleging misrepresentations in the overstatement of horsepower in its KitchenAid mixers. As part of the settlement, Defendant agreed to disclose that "[o]ur 1.3

theoretically achievable before the blender meets resistance, *i.e.*, the very limited amount of time between the blender motor turning on and the blades moving. In other words, Whirlpool uses peak horsepower representations to dupe consumers into paying significant premiums for the Blenders, without conveying any useful information.

8. Defendant's misrepresentation of "peak" horsepower does not reflect the Blenders' actual horsepower output while in household operation over the course of the Blender motor's life.

9. Whirlpool recognizes that consumers view a blender's power as an important characteristic in making blender purchasers. Defendant specifically highlights claims concerning the Blenders' horsepower in its advertising, on its website, in its press releases, on its packaging and in its point of sale marketing materials.

10. All of Whirlpool's overstated horsepower representations are designed to mislead consumers into believing the Blenders have much more power than they actually have, leading to consumers overpaying for Blenders and/or causing consumers to purchase the Blenders instead of other manufacturers' blenders or less expensive blenders.

11. Reasonable consumers like Plaintiffs expect the Blenders to produce the represented horsepower stated on Whirlpool's marketing materials, website, and/or product packaging during household operation and would not have purchased the Blenders or would have paid less had they known that Whirlpool's representations regarding the Blenders' peak horsepower were false and misleading. At bottom, the Blenders are worth substantially less than what Plaintiffs and class members paid to buy them.

---

horsepower (HP) motor reference reflects the horsepower rating of the motor itself and not the mixer's horsepower output to the mixer bowl. This robust motor … delivers .44 HP to the bowl…" *Bornstein v. Whirlpool Corp.*, Case No. 12-1532 CA 42, Florida 11th Judicial Circuit, Miami-Dade County.

12.     Plaintiffs have suffered damages resulting from Whirlpool's actions and omissions. Accordingly, Plaintiffs bring this class action asserting claims against Defendant for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, negligent misrepresentation and, in the alternative, unjust enrichment.

## JURISDICTION

13.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Whirlpool's wholly-owned subsidiary KitchenAid is incorporated as an Ohio corporation and all of the Blenders are fabricated and packaged in KitchenAid's Greenville, Ohio manufacturing factory; Defendant Whirlpool Corporation is a citizen of the State of Michigan; Plaintiffs are citizens of, or purchased Blenders within the State of Maryland, the State of Virginia, the State of Illinois, the State of Wisconsin, the State of New York, and the State of Ohio; there are more than 100 class members in many different states; and the aggregate amount in controversy exceeds $5 million.

14.     Venue is proper in this Court because Whirlpool transacts business and manufactured the Blenders in this District; Whirlpool distributed, advertised and sold Blenders in this District, including the Blenders Plaintiffs purchased; and Plaintiff Anderson reviewed and evaluated Defendant's horsepower representation and eventually purchased two Blenders in this District.

## THE PARTIES

15.     Eric Nathan is a resident of the State of Maryland. On or about November 24, 2017, Mr. Nathan purchased a KitchenAid High Performance® Series Blender from a Best Buy store location in Pentagon City, Virginia for a purchase price in excess of $25.00 and used it for personal, family, and/or household purposes. Plaintiff Nathan reviewed and evaluated

4

Defendant's representations and advertisements about the High Performance Blender containing 3.0 horsepower before purchasing his Blender. In the weeks leading up to his purchase of the Blender, he reviewed videos on KitchenAid's YouTube channel while at his home in Hyattsville, Maryland promoting the High Performance Blender and its 3.0 horsepower. Plaintiff Nathan also watched QVC and Home Shopping Network television promotions and reviews of other comparable blenders before purchasing his High Performance Blender from his home in Hyattsville, Maryland. Mr. Nathan also reviewed the outside of the product packing for the High Performance Blender including the prominent statement that the Blender had 3.0 horsepower and saw that the Blender came with 10-year warranty before purchasing his Blender while at a Best Buy store location in Pentagon City, Virginia. Plaintiff Nathan would not have purchased his Blender or would have paid substantially less for it absent Defendant's misleading horsepower representations.

16.     Chris Smith is a resident of the State of Illinois. In late December of 2018 and while in Illinois, Ms. Smith purchased a High Performance Series Blender online from Walmart for a purchase price in excess of $25.00 and used it for personal, family, and/or household purposes. Plaintiff Smith reviewed and evaluated representations and advertisements about the High Performance Blender containing 3.0 horsepower before purchasing her Blender. Plaintiff Smith reviewed the product descriptions for the High Performance Blender online on Walmart.com, Kohls.com, Amazon.com, BestBuy.com and Target.com before purchasing the Blender while at her residence in Aurora, Illinois. Plaintiff Smith recalls reviewing that the Blender had 3.0 horsepower and had lots of power.  She further recalls that the Blender was more powerful than comparable blenders also listed on the various websites she visited to review the Blender. While searching on Walmart.com, Kohls.com, Amazon.com, BestBuy.com and

Target.com, Plaintiff Smith saw the High Performance Blender came with a 10-year warranty. She would not have purchased her Blender or would have paid substantially less for it absent Defendant's misleading horsepower representations.

17.    Plaintiff William Johnson is a resident of the State of Illinois and was formerly a resident of the State of Wisconsin. In roughly February 2017, Mr. Johnson purchased a Pro Line Blender in person at a Target store in Superior, Wisconsin for a purchase price in excess of $25.00 and used it for personal, family, and/or household purposes. He reviewed and evaluated Defendant's horsepower representations and advertisements, including that the Blender contained 3.5 horsepower, before purchasing the Blender. Mr. Johnson reviewed the outside of the Blenders' packaging before purchasing his Blender, including that the Blender had 3.5 horsepower and noted that there was a symbol on the product packaging indicating that the Blender had a 10-year warranty. Plaintiff Johnson would not have purchased his Blender or would have paid substantially less for it absent Defendant's misleading horsepower representations.

18.    Plaintiff Richard Tschernjawski is a resident of the State of New York. On or about May 28, 2018, Mr. Richard Tschernjawski purchased a Pro Line Blender in person at Macy's in Syracuse, New York for a purchase price in excess of $25.00 and used it for personal, family, and/or household purposes. He reviewed and evaluated Defendant's horsepower representations, including that the Blender contained 3.5 horsepower, before purchasing the Blender. He saw on the advertising and packaging that the Blender offered 3.5 horsepower. He reviewed the Blenders' packaging at Macy's before purchasing his Blender, including that the Blender had 3.5 horsepower and noted that there was a symbol on the product packaging indicating that the Blender had a 10-year warranty. Plaintiff Tschernjawski would not have

6

purchased his Blender or would have paid substantially less for it absent Defendant's misleading horsepower representations.

19.     Plaintiff Judith Anderson is a resident of the State of Ohio. On or about February 25, 2017, Ms. Anderson purchased a High Performance Blender at Best Buy in Cincinnati, Ohio and a Pro Line Blender at Macy's in Cincinnati, Ohio, on or about December 15, 2018, each for a purchase price in excess of $25.00 and used it for personal, family, and/or household purposes. She reviewed and evaluated Defendant's horsepower representations, including that the Blenders contained 3.0 and 3.5 horsepower, before purchasing the Blenders. For the High Performance Blender, she saw on the advertising and Blender packaging that the Blender offered 3.0 horsepower. But for Whirlpool's representation that the High Performance Blender produced 3.0 horsepower, Ms. Anderson would not have purchased the Blender. She also saw the High Performance Blender had a 10-year warranty before she purchased it. For the Pro Line Blender she purchased at Macy's in Cincinnati, Ohio, Plaintiff Anderson reviewed the Blenders' packaging, including that the Blender had 3.5 horsepower and noted that there was a symbol on the product packaging indicating that the Blender had a 10-year warranty, before purchasing it. Plaintiff Anderson would not have purchased her Blenders or would have paid substantially less for them absent Defendant's misleading horsepower representations.

20.     Defendant Whirlpool Corporation is a Delaware corporation with its principal place of business located in Benton Harbor, Michigan. During the Class Period (October 2015 to the present for Pro Line Blender purchasers and September 2017 to the present for High Performance Blender purchasers) Defendant Whirlpool Corporation, operating under the KitchenAid brand name, manufactured, marketed and/or sold Blenders in this District and throughout the United States and participated in the conduct alleged in this complaint.

KitchenAid, Inc. has been a registered Ohio corporation for over 80 years, and has manufactured and sold goods out of its Greenville, Ohio manufacturing factory and offices since 1946. Greenville, Ohio is located within the Southern District of Ohio. In 2015, this plant was substantially enlarged as it became the sole production facility for KitchenAid's new line of high-performance blenders. After two years of product development, KitchenAid began producing the Pro Line Blenders on March 28, 2016 from the Greenville production facility. In 2017, KitchenAid began producing the High Performance Blenders at the Greenville production facility. The Greenville facility remains the main production facility for the Blenders.

## FACTS

### Overview: Horsepower

21.     Horsepower is a unit of measurement used to quantify the power output of a motor or an engine.

22.     The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watts to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of work. One unit of horsepower is equal to 746 watts.

23.     The amount of work generated by any given electrical motor can be determined by examining the electrical voltage available to it and the amperage that the motor is capable of drawing from a power source. To calculate an electrical motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower (one horsepower equals approximately 746 watts).

24.     A simple equation thus allows the ability to calculate horsepower by multiplying the available voltage, amps, and motor efficiency divided by 746 (to convert into horsepower as measured by wattage):

$$\frac{\textbf{(Voltage)} \text{ x } \textbf{(Amperage)} \text{ x } \textbf{(Motor Efficiency)}}{\textbf{746}} = \textbf{HP}$$

25.     Most consumer electronic and circuit breakers in the United States are 15 amps with some going as high as 20 amps, and electrical circuits are able to handle 110 to 120 volts. Defendant's Blenders are rated at 15 amps and are able to handle 120 volts, which equates to 1,800 watts or theoretically a possible 2.41 horsepower without taking into consideration the motor's efficiency. Heat and other factors decrease the efficiency, which would further decrease the actual power output of the motor.

**Whirlpool's Horsepower Misrepresentations**

26.     A stationary blender consists of a blender jar with a rotating metal blade at the bottom, powered by an electric motor in the base.

27.     Defendant promotes the power of KitchenAid Pro Line and High Performance Series Blenders as particularly effective at mixing, puréeing, liquefying or emulsifying food by highlighting the Blenders' particular "peak horsepower." Defendant's Blenders do not actually operate at their advertised peak horsepower and consumers never experience anywhere close to the 3.0 or 3.5 horsepower representations during household use.

28.     In an attempt to achieve the quixotic advertised horsepower, Defendant has used an unrealistic laboratory amperage draw, which far exceeds the amperage power capabilities available for common household appliances, including the Blenders. Despite Defendant's attempts to manufacture inflated horsepower output in a purely laboratory setting not achievable in consumer use, Defendant still fails to accurately divulge that the Pro Line Blender Series is

9

incapable of reaching the advertised "peak" 3.5 horsepower even under prime laboratory testing conditions.

29.     Understanding that consumers want powerful blenders, Defendant leverages this consumer desire by promoting the misleading horsepower information, and then prices the Blenders on the basis of overstated and misleading "horsepower" ratings and representations. Defendant promotes the power of the Blenders as particularly effective at mixing, puréeing, liquefying or emulsifying food by highlighting the Blenders' "peak horsepower."

30.     The advertised "peak" Horsepower plays a substantial, measurable role in determining the price of the Blenders. Whirlpool understands consumers will pay more for more "power" which in turn means Whirlpool can - and does – charge a price premium for the Blenders. As Derek Ernst, Whirlpool's Global Marketing Director for the KitchenAid small appliances stated in a press release: "[p]ower is particularly important to those looking to quickly and easily incorporate healthful, nutritious foods into their diets." http://www.multivu.com/players/English/7766752-kitchenaid-pro-line-series-blender/     (last visited on Nov. 4, 2019). In the same press release, Defendant specifically focuses on the power misrepresentations  and boldly asserts that the Pro Line has "the largest, most powerful motor that creates the smoothest blends I've ever seen, this exceptional new machine marks the next generation in blending." *Id*. (quoting Tess Master, a KitchenAid global ambassador).

31.     When the High Performance Blender Series was released, Nikki Lockett, the U.S. Marketing Lead for KitchenAid Small Appliances touted that "[t]he new High Performance Series Blender is not only powerful but also exceptionally easy to use." https://www.prnewswire.com/news-releases/kitchenaid-introduces-new-high-performance-series-blender-300519570.html (last visited Nov. 4, 2019). Defendant intentionally emphasizes

the misrepresented "peak horsepower" and overall power capabilities in marketing the Blenders to consumers and Plaintiffs.

32.     Indeed, on Whirlpool's KitchenAid website page explaining the difference between its different models, the power of each blender is the first characteristic listed and the blenders are listed in order from highest peak horsepower to lowest, and priced according to advertised horsepower. https://www.kitchenaid.com/countertop-appliances/blenders.html (last visited February 20, 2019).

33.     Whirlpool identifies its Pro Line Blender as "The Most Powerful Blender" and promotes that, "[o]ur Pro Line® series of professional-grade kitchen blenders let you create everything from smoothies to nut butters. With 3.5 peak horsepower, you can transform any ingredient quickly and easily." *Id.*

34.     Similarly, Defendant praises its High Performance Blender as "Power for Optimal Performance" and having a "powerful 3.0 Peak HP motor" that "deliver[s] optimal performance." *Id.*

35.     The Pro Line ($649.99) or the High Performance ($564.99) Blenders were advertised at these prices during the majority of the Class Period. In the Spring of 2019, and after receiving written notice from Plaintiffs' Counsel regarding KitchenAid's Blender horsepower misrepresentations, Defendant drastically slashed prices on both the Pro Line ($359.99) and the High Performance ($319.99). Since that time, Defendant has raised the listed prices of the Blenders.

36.     By highlighting power above all other performance factors, Defendant suggests to consumers that they are receiving a value for the higher advertised horsepower by paying more for a High Performance or Pro Line Blender.

11

37.     In fact, as is explained below, the higher end Blenders at issue in this case only have a theoretical maximum 2.41 horsepower during household use; in actual use the motor efficiency is well below 100%. Consumers receive substantially less horsepower during ordinary household use than this theoretical maximum, and pay a significant premium based on misleading horsepower representations and ratings.

38.     The following are examples of the front of the box of KitchenAid's product packaging for the Blenders:



(picture taken of front of box and packaging for High Performance Blender on February 20, 2019 in Cincinnati, Ohio).



(picture taken of front of box and packaging for Pro Line Blender on February 20, 2019 in Cincinnati, Ohio).

39.     As identified in the pictures in the preceding paragraph, the standardized Blender boxes are uncluttered and simple, with generally just a picture of the Blender, KitchenAid's logo, the name of the blender series, an all-caps reference to the amount of horsepower each of the Blenders contains, and an emblem noting the Blenders have a 10-year warranty. For the High Performance Blender, the 10-year warranty emblem is displayed on the top of the box; for the

Pro Line Blender the 10-year warranty emblem is displayed on the lower left corner of the front of the box and on top of the box. The Plaintiffs and Class members are the intended warranty beneficiaries issued by Defendant as represented on the Blender packaging. The pictures of the Blenders included above are of the front of the Blenders' packaging.

40.    Defendant's packaging does not contain a disclaimer or qualification anywhere on the box pertaining to the peak horsepower.

41.    In addition to its website and packaging materials, Defendant provides point of sale materials and advertising copy to retailers highlighting the Blenders' alleged horsepower.

42.    Whirlpool's promotional strategy rests, in part, on its understanding that its misrepresentations will be provided to the public, on Blender boxes, point of sale materials, and by the media and "review" sites which simply pass along Whirlpool's statements, unchecked and unfiltered. For example, the following reviews and third-party publications about the Blenders convey the information, just as Whirlpool understood would happen:

**Pro Line**

a.    "The KitchenAid Pro Line Series blender relies on a powerful electric motor with a rated output of 3.5 peak horsepower." https://www.cnet.com/reviews/kitchenaid-pro-line-series-blender-review/2/ (last visited May 1, 2019);

b.    "Equipped with a monster-size 3.5 peak horsepower motor set inside a massive die-cast metal base, this machine has blending power and then some." https://www.cnet.com/reviews/kitchenaid-pro-line-series-blender-review/ (last visited May 1, 2019);

c. "3.5-peak-horsepower motor offers the most power of any blender, easily handling tough ingredients like frozen fruits and firm vegetables." https://www.williams-sonoma.com/products/kitchenaid-pro-line-series-blender/?pkey=s%7Cpro%20line%7C9 (last visited May 1, 2019);

d. "This beast of a machine offers up 1800 watts of power with 3.5 peak horsepower." https://gotgreensrevolution.com/kitchenaid-pro-line-series-blender/ (last visited May 1, 2019);

e. "Powerful 3.5 Peak HP motor blends tough ingredients efficiently, without getting bogged down." https://www.surlatable.com/product/PRO-3064268/KitchenAid+Pro+Line+Series+Blender (last visited May 1, 2019);

f. "The KitchenAid Pro-line Series Blender brings powerful blending right to your fingertips. Features a powerful 3.5 peak HP motor and sturdy stainless steel blades." https://www.bedbathandbeyond.com/store/product/kitchenaid-reg-pro-line-reg-series-blender/3295602 (last visited May 1, 2019);

g. "Pro Line 3.5 HP Blender" and "[t]he KitchenAid Pro Line Series Blender is the most powerful blender" https://www.walmart.com/ip/KitchenAid-amp-174-Pro-Line-3-5-HP-Blender-Frosted-Pearl-White-KSB7068FP/329977051 (last visited May 1, 2019);

h. "The KitchenAid Pro-line Series Blender brings powerful blending right to your fingertips. Features a powerful 3.5 peak HP motor…" https://www.bedbathandbeyond.com/store/product/kitchenaid-reg-pro-line-reg-series-blender/3295602?keyword=blender (last visited on May 1, 2019); and

i. "3.5 Peak Horse Power Motor (equivalent to more than 2,600 watts) – easily blends everything from smoothies and dressings to nut butters and nut milk." https://www.everythingkitchens.com/kitchenaid-pro-line-series-blender-frosted-pearl-ksb7068fp.html (last visited May 1, 2019).

## High Performance

a. "Optimal performance with the blender's powerful 3.0 peak HP motor and stainless steel blade for every blend." https://www.amazon.com/KitchenAid-KSB6060BM-Performance-Blender-Black/dp/B077L3F2SG (last visited May 1, 2019);

b. "The single dial and two switches let you seamlessly transition between its nine variable speeds, and it's powered by a 3 HP motor for top-notch operation." https://www.bestbuy.com/site/kitchenaid-ksb6060bm-high-performance-series-blender-black-matte/6026104.p?skuId=6026104 (last visited May 1, 2019);

c. "A powerful 3 peak HP motor with a range of nine speeds gives you amazing control with this high-performance blender from KitchenAid®." https://www.macys.com /shop/product/kitchenaid-ksb6060-high-performance-series-blender?ID=5197360 (last visited May 1, 2019);

d. "Optimal performance with the powerful 3.0 Peak HP motor and stainless steel" and "a powerful 3.0 peak motor with stainless blade and simple controls for all of your healthy blends." https://www.walmart.com/ip/KitchenAid-KSB6060BM-High-Performance-Series-Blender-Matte-Black/813993283 (last visited May 1, 2019); and,

e. "Optimal Performance with the powerful 3.0 Peak HP motor and stainless steel blade." https://www.target.com/p/kitchenaid-high-performance-series-blender/-/A-53046012 (last visited May 1, 2019) and https://www.kohls.com/product/prd-3337036/kitchenaid-ksb6060-high-performance-series-blender.jsp?color=Matte%20White&prdPV=35 (last visited May 7, 2019).

43. Whirlpool encourages its retailers to uniformly promote the Blenders to have either 3.0 or 3.5 horsepower. Most representations from Blender retailers promote the Blenders 3.0 or 3.5 horsepower without any attempt at qualification. Moreover, many retailer reviews are actually reviews collected as part of a promotion sponsored by Whirlpool.

44. An agency relationship exists between Whirlpool and its retailers for the purpose of selling, marketing, advertising, and warranting the Blenders. Whirlpool authorized the retailers to market, advertise, promote, and sell the Blenders to end consumers, like Plaintiffs. Furthermore, Whirlpool pre-approves the marketing and advertising materials that retailers must use relating to the Blenders.

45. Whirlpool's promotional strategy, through third-party review and retailer online publications, also promotes that the Blenders will produce the 3.0 or 3.5 horsepower for at least 10 years from the date of purchase.

**Pro Line**

a. "10-year limited replacement warranty." https://www.williams-sonoma.com/products/kitchenaid-pro-line-series-blender/?pkey=s%7Cpro%20line %7C9 (last visited May 1, 2019);

b. "KitchenAid Pro Line Series blenders jump into the market with a longer, 10-year, warranty period than their direct competitors Blendtec (8) and Vitamix

18

(7).” https://gotgreensrevolution.com/kitchenaid-pro-line-series-blender/ (last visited May 1, 2019);

c. “Warranty: 10-year limited replacement warranty.” https://www.surlatable.com/ product/ PRO-3064268/KitchenAid+ Pro+Line+Series+Blender (last visited May 1, 2019);

d. “10-year manufacturer's warranty” https://www.bedbathandbeyond.com/store/ product/kitchenaid-reg-pro-line-reg-series-blender/3295602 (last visited May 1, 2019); and,

e. “10-year KitchenAid Warranty” https://www.everythingkitchens.com/kitchenaid-pro-line-series-blender-frosted-pearl-ksb7068fp.html (last visited May 1, 2019).

**High Performance**

a. “Backed by a 10-year Hassle—Free replacement warranty.” https://www.amazon. com/KitchenAid-KSB6060BM-Performance-Blender-Black/dp/B077L3F2SG (last visited May 1, 2019);

b. Noting a 10-year warranty under “Specifications” https://www.bestbuy.com /site /kitchenaid-ksb6060bm-high-performance-series-blender-black-matte/6026104.p? skuId=6026104 (last visited May 1, 2019);

c. “Manufacturer's 10-year warranty” https://www.macys.com/shop/product/ kitchenaid-ksb6060-high-performance-series-blender?ID=5197360 (last visited May 1, 2019);

d. “10-year hassle free replacement warranty” https://www.walmart.com/ip /KitchenAid-KSB6060BM-High-Performance-Series-Blender-Matte-Black/813993283 (last visited May 7, 2019) and

https://www.target.com/p/kitchenaid-high-performance-series-blender/-/A-53046012 (last visited May 1, 2019); and,

e. "Manufacturer's 10-year limited warranty" https://www.kohls.com/product/prd-3337036/kitchenaid-ksb6060-high-performance-series-blender.jsp?color=Matte%20White&prdPV=35 (last visited May 7, 2019).

46. Whirlpool's misrepresentations concerning the associated Blender horsepower conflate the advertised power with actual operating power and performance of the Blenders.

47. A reasonable consumer would understand the term "peak horsepower" to mean the maximum horsepower output obtainable during the Blender's operation in the Blender Jar itself while in household use. In fact, as Power Tool Institute's June 2016 Teacher's Guide to Power Tool Safety Terms describes "peak horsepower" as the "the maximum output that can be developed in actual use." *See* A Teacher's Reference Guide: Power Tool Safety Terms, Power Tools Institute, (May 2016), http://www. powertoolinstitute.com/pti_pdfs/ Teach-Ref-Guide-Final-05-2016.pdf. (last visited Nov. 4, 2019).

48. Plaintiff Nathan reviewed and considered Whirlpool's representations that the High Performance Series could achieve 3.0 horsepower, including on Defendant's marketing materials, product representations, and product packaging, before purchasing the High Performance Series Blender.

49. Plaintiff Nathan understood Whirlpool's representations, including on marketing materials, product representation, and product packaging, that the High Performance Series Line Series Blender could achieve 3.0 horsepower in normal operation. But for Whirlpool's representations about the High Performance Blender containing 3.0 horsepower, Plaintiff Nathan

would not have purchased his High Performance Blender or would have paid substantially less for it.

50.     Plaintiff Smith reviewed and considered Whirlpool's representations that the High Performance Series could achieve 3.0 horsepower during household use, including on Whirlpool's marketing materials, product representations, and product packaging, before purchasing the High Performance Series Blender.

51.     Plaintiff Smith understood Whirlpool's representations, including on marketing materials, product representation, and product packaging, that the High Performance Series Blender could achieve 3.0 horsepower in normal household operation. But for Whirlpool's representations about the High Performance Blender containing 3.0 horsepower, Plaintiff Smith would not have purchased her High Performance Blender or would have paid substantially less for it.

52.     Plaintiff Johnson reviewed and considered Whirlpool's representations that the Pro Line Series could achieve 3.5 horsepower during household use, including on Whirlpool's marketing materials, product representations, and product packaging, before purchasing the Pro Line Series Blender.

53.     Plaintiff Johnson understood Whirlpool's representations, including on marketing materials, product representation, and product packaging, that the Pro Line Series Blender could achieve 3.5 horsepower in normal household operation. But for Whirlpool's representations about the Pro Line Blender containing 3.5 horsepower, Plaintiff Johnson would not have purchased his Pro Line Blender or would have paid substantially less for it.

54.     Plaintiff Tschernjawski reviewed and considered Whirlpool's representations that the Pro Line Series could achieve 3.5 horsepower during household use, including on

21

Whirlpool's marketing materials, product representations, and product packaging, before purchasing the Pro Line Series Blender.

55.    Plaintiff Tschernjawski understood Whirlpool's representations, including on marketing materials, product representation, and product packaging, that the Pro Line Series Blender could achieve 3.5 horsepower in normal household operation. But for Whirlpool's representations about the Pro Line Blender containing 3.5 horsepower, Plaintiff Tschernjawski would not have purchased his Pro Line Blender or would have paid substantially less for it.

56.    Plaintiff Anderson reviewed and considered Whirlpool's representations that the Blenders could achieve 3.5 and 3.0 horsepower during household use, including on Whirlpool's marketing materials, product representations, and product packaging, before purchasing her Blender.

57.    Plaintiff Anderson understood Whirlpool's representations, including on marketing materials, product representation, and product packaging, that the Blenders could achieve 3.0 or 3.5 horsepower in normal household operation. But for Whirlpool's horsepower representations, Plaintiff Anderson would not have purchased her Blenders or would have paid substantially less for them.

**"Motor Testing Revelations"**

58.    Plaintiffs' independent horsepower testing has revealed that in order to even come close to achieving the misrepresented peak horsepower in the Blenders, Defendant has drawn on a controlled laboratory testing power source which is never actually achievable in household use. Defendant relies on laboratory testing and an amperage draw of nearly two times that which is permitted for safe operation under electrical capabilities of a 20 Amp outlet in homes in the

United States, or two and a half times the power draw for which the Blender motors are rated at for 15 Amps.

59.     Even with an amperage draw of 1.97 times the maximum 20 amp household breaker, the Pro Line Blenders do not meet the advertised 3.5 peak horsepower. In fact, the Pro Line Blenders are incapable of producing 3.5 peak horsepower even in laboratory settings.

60.     Plaintiffs' thermal testing has also revealed that the Blenders' motors are rated as a UL Class F 155C insulation system or thermal classification, which means that the blender can only operate safely at a certain maximum temperature rise. The thermal insulation classification also limits the Blenders' household horsepower capabilities to safely operate well under the misrepresented peak horsepower.

61.     Even if the Blenders were hypothetically capable of an electrical draw only found in controlled laboratory testing, well beyond household capabilities and ignoring the motor's thermal rating, the approximate run time while in household use would be limited by the home's electrical circuit breaker, which would trip in a matter of seconds while in use on a consumer's kitchen counter.

62.     There is no benefit to the consumer in having a laboratory-only peak horsepower rating when it is the operating horsepower or actual power output that is relevant to the operating effectiveness of the Blenders.

63.     Independent testing with the Blender containers shows that the average horsepower that a consumer can expect in home use for the Pro Line Blender is not 3.5 horsepower as advertised, but in fact closer to 1.6 horsepower. The same independent testing protocol showed that the average horsepower that a consumer can expect in home use for the

High Performance Blender is not 3.0 horsepower as advertised, but in fact closer to 1.4 horsepower.

64. Nonetheless, throughout the KitchenAid website – Whirlpool maintains and markets the Pro Line Series Blender as having a "Powerful 3.5 Peak HP Motor". *See* KitchenAid, Pro Line® Series Blender at https://www.kitchenaid.com/countertop-appliances/pro-line-series/blenders/p.pro-line-series-blender.ksb7068ca.html (last visited Jan. 31, 2019). In addition, Defendant implies that consumers will reap the benefit of the "peak" horsepower motor in actual operation, stating as part of the discussion under "Powerful 3.5 Peak HP Motor", that it "[b]lends tough ingredients fast without bogging down":



https://www.kitchenaid.com/countertop-appliances/pro-line-series/blenders/p.pro-line-series-blender.ksb7068ca.html (last visited Feb. 1, 2019).

65. Whirlpool makes similar representations for the High Performance Blenders. In a September 14, 2017 press release, Whirlpool stated that the "new High Performance Series

Blender … features a 3.0 Peak HP motor*, a variable speed dial and durable, long lasting construction." https://www.prnewswire.com/news-releases/kitchenaid-introduces-new-high-performance-series-blender-300519570.html (last visited on Feb. 13, 2019). The asterisk furthers the misrepresentation by stating that the Peak HP motor means "Laboratory measurement of peak horsepower output of motor." *Id*.

66.     Whirlpool's attempted clarifications of the phrase Peak HP motor does not inform Blender purchasers that the Blenders actually produces a horsepower output far below the advertised horsepower during normal household usage. A reasonable consumer is led to believe that the power achieved in the laboratory is also the power achieved in household use through Defendant's misleading marketing and packaging of its Blenders.

67.     Whirlpool further attempts to add disclaimers in very small font on its website indicating that the listed horsepower was identified when tested under laboratory conditions. But this does not suffice to alert consumers that the actual operating horsepower of the Blenders' motors is far less than advertised.

68.     The only reason to provide representations of peak horsepower of 3.0 or 3.5 horsepower is to mislead consumers and entice consumers into purchasing Defendant's Blenders at an inflated price or attract consumers away from lower advertised horsepower competitor blenders. A reasonable consumer's blender purchasing decision is driven by the actual power capabilities of an appliance while in household use, not what Defendant's laboratory testing engineers and marketing personnel were able to concoct under unrealistic laboratory testing conditions.

69.     Moreover, it is clear that Defendant only recently attempted to add its disingenuous disclaimers. When Defendant announced the Pro Line Series Blenders on or

around March 5, 2016 Defendant announced the blender "feature[s] a 3.5 Peak HP motor" and offered no disclaimer. http://www.multivu.com/players/English/7766752-kitchenaid-pro-line-series-blender/ (last visited Feb. 7, 2019).

70.    Defendant's representations are false and misleading as no consumer ever gets the benefit of a 3.0 or 3.5 horsepower motor in actual household use.

71.    In the real world motors and motor power "bleed" some drawn energy. Resistance, friction, alternating current's relative inefficiency, and heat (among other things) reduces motor efficiency. Thus, even the 2.41 HP that can theoretically be achieved given household amperage is overstated in actual use due to the motor's efficiency.

72.    The Blenders do not come close to reaching the represented "peak horsepower," in household use, and all such claims made in connection with the marketing and sale of its Blenders are false and misleading as to the actual capabilities of these appliance devices. Defendant understands this fact and understood it when it developed marketing materials, created the Blenders' packaging, and prepared other sales materials.

73.    Thus, both in operation and theory, the horsepower claims are false and misleading. Neither of Defendant's Blenders are capable of operating at 3.0 or 3.5 horsepower during household operation for any relevant period of time that would be considered "useful" as expected by a reasonable consumer purchasing a Blender.

74.    Whirlpool's competitors recognize and have admitted that peak horsepower is not the operational horsepower and is an amount of horsepower the consumer will never achieve in actual use.

75.    Some competitors, such as Vitamix, advertise only a 2.2 peak horsepower blender as their highest-powered household blender.

26

76.     Defendant is fully cognizant that it is intentionally advertising a misleading peak horsepower that far outpaces other leading competitors, and further fails to disclose that its peak horsepower representations are a fictitious laboratory horsepower results, impossible to achieve in household use.

77.     Plaintiffs, like other class members who purchased the Blenders, reviewed and considered Whirlpool's representations that the Blenders produced 3.5 and 3.0 horsepower before purchasing the Blenders.

78.     High Performance Blenders purchasers, like Plaintiffs and other class members, reasonably expected that the High Performance Blenders they purchased would produce the 3.0 horsepower during household usage as Whirlpool consistently represented.

79.     Pro Line Blenders purchasers, like Plaintiffs and other class members, reasonably expected that the Pro Line Blenders they purchased would produce the 3.5 horsepower during household usage as Whirlpool has consistently represented.

80.      Whirlpool's misleading statements concerning peak horsepower are not mere puffery.  A reasonable consumer would consider Defendant's peak horsepower representations as factual.

## CLASS ACTION ALLEGATIONS

81.     It is believed that there are over 10,000 Plaintiffs across the United States who have purchased Defendant's Blenders.

82.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this suit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased KitchenAid Pro Line Series Blenders or KitchenAid High Performance Series Blenders

27

primarily for personal, family, or household purposes, and not for resale.[2]

83.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Nathan brings this suit on behalf of himself and a subclass ("Maryland Class") defined as follows:

> All persons from Maryland who purchased any KitchenAid Blender for personal, family or household use and not for resale.

84.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Nathan brings this suit on behalf of himself and a subclass ("Virginia Class") defined as follows:

> All persons from Virginia who purchased any KitchenAid Blender for personal, family or household use and not for resale.

85.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Smith brings this suit on behalf of herself and a subclass ("Illinois Class") defined as follows:

> All persons from Illinois who purchased any KitchenAid Blender for personal, family or household use and not for resale.

86.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Johnson brings this suit on behalf of himself and a subclass ("Wisconsin Class") defined as follows:

> All persons from Wisconsin who purchased any KitchenAid Blender for personal, family or household use and not for resale.

87.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Tschernjawski brings this suit on behalf of himself  and a subclass ("New York Class") defined as follows:

> All persons from New York who purchased any KitchenAid Blender for personal, family or household use and not for resale.

88.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Anderson brings this suit on behalf of herself and a subclass ("Ohio Class") defined as follows:

> All persons from Ohio who purchased any KitchenAid Blender for personal, family or household use and not for resale.

---

[2] Plaintiffs reserve the right to amend this definition as necessary.

89.     Plaintiffs specifically exclude Defendant, its employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel and their employees; and the judicial officers and their associated court staff assigned to this case from the proposed Classes.

90.     The definitions of the Class and Subclasses are unambiguous, and Plaintiffs are members of the Class and Subclasses they seek to represent.

91.     Plaintiffs reserve the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

92.     The Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs understand that Whirlpool has sold more than 10,000 of the Blenders.

93.     Each Subclass is no numerous and geographically dispersed in each State that joining all the member of each Subclass would be impracticable. The exact number of members in each Subclass is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believes each Subclass consist of at least 100 potential class members.

94.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a KitchenAid Blender sold with a misleading and/or false horsepower rating and suffered a pecuniary loss as a result of the purchase. The Plaintiffs' claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for the Plaintiffs and all other members of the Classes.

All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

95.     Plaintiffs' claims are typical of the claims of each Subclass because Plaintiffs purchased a KitchenAid Blender sold with a misleading and/or false horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass Plaintiffs' claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for the Plaintiffs and all other members of the Subclasses. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

96.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and the Subclasses and have retained counsel competent and experienced in class action litigation.

97.     Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclasses, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and each Subclass as a whole. Specifically, Defendant continues to misrepresent the horsepower available in its Blenders.

98.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

a.   the nature of Whirlpool's promoted horsepower representations;

b.   whether Whirlpool misrepresented the peak horsepower, and/or horsepower of the Blenders;

c.   whether the Whirlpool's "peak horsepower" claims were false and or misleading;

d.   whether Whirlpool knew or should have known its claims regarding the Blenders' power were false and/or misleading;

e.   whether Whirlpool's representations were material to consumers and the market;

f.   whether the Blenders produce "peak horsepower" for any time material to consumer operation and use;

g.   whether Whirlpool placed "peak horsepower" ratings on the Blenders' packaging;

h.   whether Whirlpool provided point of sale materials to retailers for use in promoting Whirlpool's Blenders and whether those materials included misleading references to horsepower;

i.   whether Whirlpool provided advertising copy or suggested promotional language to retailers for use in promoting Whirlpool's Blenders and whether those materials included misleading references to horsepower;

j.   whether Whirlpool's peak horsepower statements constituted contractual promises or warranties on the Blenders;

k.   whether Whirlpool's misleading representations caused it to receive money that it would not have received absent those representations;

l.  whether the Whirlpool's actions breached the duties it owed Plaintiffs and the Class under express warranties for the Blenders;

m.  whether the Whirlpool's actions breached the duties it owed Plaintiffs and the Class under its implied warranties regarding the Blenders;

n.  whether Plaintiffs and the Class paid more for the Blenders than they would have paid absent Whirlpool's misleading representations;

o.  whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief;

p.  whether the Court should enjoin Whirlpool from continuing to misrepresent the Blenders' power; and

q.  whether the issues in the case should be addressed on a class basis.

99.     Resolution of each of these issues will turn upon evidence common to all Class members.

100.    Resolution of issues common to all Class members will predominate over individual issues.

101.    The issues common to the Class and the nature of the common relief creates a cohesive class for injunctive relief.

102.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

a.  It will avoid a multiplicity of suits and consequent burden on the courts and Whirlpool;

b.  It would be virtually impossible for all members of the Class to intervene as parties-plaintiffs in this action;

    c.  It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

    d.  It will provide court oversight of the claims process, once Whirlpool's liability is adjudicated;

    e.  It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

    f.  It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporate defendant.

103.    Plaintiffs and the proposed Class and Subclasses satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

104.    Plaintiffs are not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

**PRE-LAWSUIT NOTICE**

105.    Months before filing this Complaint, Plaintiffs gave Whirlpool written notice and the opportunity to cure as to the falsity of Whirlpool's affirmations of fact and/or written promises relating to the Blenders' nature, and as to the unfair and deceptive trade practices. Plaintiffs' notice was on behalf of themselves and all others similarly situated and identified that a class action lawsuit was imminent. The March 2019 notice identified the harms Plaintiffs suffered and requested that Whirlpool cease overstating the horsepower in the Blenders. Whirlpool received this written notice no later than March 27, 2019.

33

106.    Plaintiffs' Counsel and Whirlpool's counsel then spoke on the phone on April 18, 2019. Whirlpool's counsel indicated that Whirlpool would need some time to provide a response and promised Plaintiffs with a formal response to Plaintiffs' March 2019 notice by May 1, 2019.

107.    Plaintiffs sent a second notice to Whirlpool, through issuing a letter to Whirlpool legal counsel on April 19, 2019 via email, indicating that Whirlpool representations about the High Performance Blender containing 3.0 horsepower and the Pro Line Blender containing 3.5 horsepower were false and constituted unfair and deceptive trade practices.

108.    Plaintiffs' counsel and Whirlpool's counsel continued to engage in several follow-up communications about this matter before the filing of the initial Complaint, including but not limited to, on May 8, 13, 14, 17, 20, 21, 22, 23 and 24, 2019.

### COUNT 1
**Breach of Express Warranty**
**(on behalf of Nationwide Class)**

109.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

110.    Plaintiffs and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

111.    Whirlpool represented on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders that the Blenders had certain horsepower specifications, as noted herein, which Plaintiffs and other consumers reviewed and considered before purchasing their Blenders.

112.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiffs and the Class members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

113. These representations constitute express warranties as to the Blenders' qualities, nature and performance.

114. These representations became part of the basis of the bargain for Plaintiffs and the other Class members because they reviewed and considered such false and/or misleading statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

115. Plaintiffs and the Class would not have purchased the Blenders absent Whirlpool's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

116. Whirlpool breached these express warranties because the Blenders cannot reach the claimed stated or "peak" horsepower even under ideal conditions during household operation, and certainly not during any blending time material to reasonable consumer use.

117. At the time the Blenders were sold, Whirlpool knew that the written affirmation of facts or written promises regarding the level of horsepower were false.

118. Whirlpool's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiffs and the Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

119. Notice is not required where, as here, Plaintiffs purchased the Blenders from a retailer rather than the manufacturer. Even though no notice was required, Plaintiffs provided Whirlpool notice over 60 days before the filing of this lawsuit.

120. Whirlpool's breach of the promises and warranties entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future

representations to conform with the Blenders' actual performance in the type of use for which they are intended.

### COUNT 2
### Breach of Express Warranty — Magnuson- Moss Warranty Act
### (on behalf of the Nationwide Class)

121.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

122.    Plaintiffs and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

123.    The Blenders are consumer products as defined in 15 U.S.C. § 2301(1).

124.    Plaintiffs and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

125.    Whirlpool is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

126.    Defendant provided Plaintiffs and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

127.    15 U.S.C. § 2310(d) is satisfied because Plaintiffs properly invoke the jurisdiction of this Court under CAFA.

128.    This same section—15 U.S.C. § 2310(d)—provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

129.    Defendant made written warranties regarding the Blenders to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

130.    Defendant breached express warranties made to Plaintiffs and the Class members.

131.    Defendant promised, affirmed, and expressly warranted that the Blenders had 3.0 or 3.5 horsepower and that the Blenders were backed by Defendant's 10-year warranty. In other words, Defendant expressly warranted to Plaintiffs and Class members that the Blenders would meet a level of performance, or power output, associated with a 3.0 or 3.5 horsepower blender motor, for the duration of the 10-year warranty promoted by Defendant, during household usage.

132.    The Blenders' product packaging exemplifies Defendant's express warranty that the Blenders will produce 3.0 and 3.5 horsepower for at least 10 years during household usage. Indeed, the front and top of the product packaging includes a picture of the blender, whether it is a Pro Line or High Performance Series, a representation about the horsepower capacity (3.0 or 3.5), and a logo indicating a 10-year warranty. The Blenders are warranted to achieve the specified level of performance of producing 3.0 or 3.5 horsepower for at least 10 years during household usage.

133.    Defendant's horsepower warranties became part of the basis of the bargain for Plaintiffs and other Class members because they reviewed and considered such statements in deciding to purchase the Blenders, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

134.    Plaintiffs reviewed and considered Defendant's representations about the Blenders producing either 3.0 or 3.5 horsepower for 10 years before purchasing the Blenders. But for Defendant's representations about the Blenders' horsepower capabilities, Plaintiffs would not have purchased the Blenders or would have paid substantially less for the Blenders.

135.    Defendant breached its horsepower warranties by delivering Blenders that do not—and indeed cannot—provide the power and performance of a 3.0 or 3.5 horsepower blender for 10 years during household usage.

136.    At the time the Blenders were sold, Defendant knew that the affirmations of fact or written promises it made regarding horsepower were false and were offered with no intention or capability of honoring them.

137.    Plaintiffs sufficiently provided Defendant with more than 60 days' notice of the potential for filing this lawsuit before it was filed. Plaintiffs provided such notice even when no notice is required where, as here, Plaintiffs have alleged that Defendant knew of—and continue to know of—the false affirmations of fact or written promises at the time of sale to Plaintiffs and the Class members.

138.    As a direct and proximate result of Defendant's breach of its express written warranties regarding the horsepower representations, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

139.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

140.    Furthermore, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendant's violation of its written warranties.

**COUNT 3**
**Breach of Express Warranty**
**(on behalf of the Maryland Class)**

141.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

142.    Plaintiffs and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

143.    Plaintiff Nathan and the Maryland Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

144.    Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Nathan and the Maryland Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase. When purchasing the Blenders, Plaintiff Nathan and the Maryland class relied on the express statements of Defendant as the basis for the bargain they made in purchasing the Blenders, and expected that Defendant would be the party responsible for such express warranties, not the direct sellers.

145.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Nathan and the Maryland Class members purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during household usage.

146.    These representations constitute express warranties as to the Blenders' qualities, nature and performance.

147.    These representations became part of the basis of the bargain for Plaintiff Nathan and the Maryland Class members because they reviewed and considered such statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

148.     Plaintiff Nathan and the Maryland Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

149.     Defendant breached these express warranties because the Blenders cannot operate at the claimed horsepower for any time during household usage.

150.     At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

151.     Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff Nathan and the Maryland Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

152.     Plaintiff Nathan provided Defendant notice over 60 days before the filing of this lawsuit.

153.     Defendant's breach of the promises and warranties entitles Plaintiff Nathan and the Maryland Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

## COUNT 4
### Breach of Express Warranty
### (on behalf of Virginia Class)

154.     Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

155.     Plaintiff Nathan and the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

156.     Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Nathan and the Virginia Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase.

157.     As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Nathan and the Virginia Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during actual operation.

158.     These representations constitute express warranties as to the Blenders' qualities, nature and performance.

159.     These representations became part of the basis of the bargain for Plaintiff Nathan and the Virginia Class members because they reviewed and considered such statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

160.     Plaintiff Nathan and the Virginia Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

161.     Defendant breached these express warranties because the Blenders cannot operate at the claimed horsepower for any time material to consumer use.

162.     At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

163.     Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff Nathan and the Virginia Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

164.     Plaintiff Nathan provided Defendant notice before the filing of this lawsuit.

165.     Defendant's breach of the promises and warranties Plaintiff Nathan and the Virginia Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

**COUNT 5**
**Breach of Express Warranty**
**(on behalf of the Illinois Class)**

166.     restate and incorporate all other allegations in this Complaint as though fully pled herein.

167.     Plaintiff Smith and the Illinois Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

168.     Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Smith and the Illinois Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase. It was

these representations of express warranty that Plaintiff Smith and the Illinois class relied upon and which were the basis for the bargain when Plaintiff Smith and the Illinois class purchased Defendant's product.

169.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Smith and the Illinois Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during actual household use.

170.    These representations constitute express warranties as to the Blenders' qualities, nature and performance.

171.    These representations became part of the basis of the bargain for Plaintiff Smith and the Illinois Class members because they reviewed and considered such statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

172.    Plaintiff Smith and the Illinois Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

173.    Defendant breached these express warranties because the Blenders cannot operate at the claimed horsepower for any time material to consumer use.

174.    At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

175.    Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff

Smith and the Illinois Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

176.    Plaintiff Smith provided Defendant notice before the filing of this lawsuit.

177.    Defendant's breach of the promises and warranties entitles Plaintiff Smith and the Illinois Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

## COUNT 6
### Breach of Express Warranty
### (on behalf of the Wisconsin Class)

178.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

179.    Plaintiff Johnson and the Wisconsin Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

180.    Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Johnson and the Wisconsin Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase. The marketing, packaging, and advertising with the express warranties above was done entirely by Defendant, with Defendant determining the ultimate sale price, and the expectation at the time of sale by Plaintiff Johnson and the Wisconsin Class was that any and all future negotiations or correspondence about the Blenders would be with Defendant, and not the direct seller.

181.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Johnson and the Wisconsin Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised.

182.    These representations constitute express warranties as to the Blenders' qualities, nature and performance.

183.    These representations became part of the basis of the bargain for Plaintiff Johnson and the Wisconsin Class members because they reviewed and considered such statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

184.    Plaintiff Johnson and the Wisconsin Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

185.    Defendant breached these express warranties because the Blenders cannot operate at the claimed horsepower for any time material to consumer use.

186.    At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

187.    Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff Johnson and the Wisconsin Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

188.    Plaintiff Johnson provided Defendant notice before the filing of this lawsuit.

189.    Defendant's breach of the promises and warranties entitles Plaintiff Johnson and the Wisconsin Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

## COUNT 7
### Breach of Express Warranty
### (on behalf of the New York Class)

190.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

191.    Plaintiff Tschernjawski and the New York Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

192.    Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Tschernjawski and the New York Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase.

193.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Tschernjawski and the New York Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during household operation.

194.    These representations constitute express warranties as to the Blenders' qualities, nature and performance.

195.    These representations became part of the basis of the bargain for Plaintiff Tschernjawski and the New York Class members because they reviewed and considered such

statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

196.    Plaintiff Tschernjawski and the New York Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

197.    Defendant breached these express warranties because the Blenders cannot operate at the claimed horsepower for any time material to consumer use.

198.    At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

199.    Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff Tschernjawski and the New York Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

200.    Plaintiff Tschernjawski provided Defendant notice before the filing of this lawsuit.

201.    Defendant's breach of the promises and warranties entitles Plaintiff Tschernjawski and the New York Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

## COUNT 8
### Breach of Express Warranty
### (on behalf of the Ohio Class)

202.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

203.    Plaintiff Judith Anderson and the Ohio Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

204.    Defendant represented that the Blenders had certain horsepower specifications on the Blenders' packaging, on KitchenAid's website and on Point of Sale materials used for display and sale of the Blenders, as noted herein, which Plaintiff Judith Anderson and the Ohio Class reviewed and considered before purchasing their Blenders. Defendant warranted that the Blenders would perform as advertised for at minimum 10 years from the date of purchase.

205.    As detailed above, these representations are false and/or misleading, and the Blenders Plaintiff Judith Anderson and the Ohio Class purchased do not conform to the above-noted horsepower representations, and cannot operate as promised during household operation.

206.    These representations constitute express warranties as to the Blenders' qualities, nature and performance.

207.    These representations became part of the basis of the bargain for Plaintiff Judith Anderson and the Ohio Class members because they reviewed and considered such statements in deciding to purchase the Blenders and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end blender.

208.    Judith Anderson and the Ohio Class would not have purchased the Blenders absent Defendant's representations about the Blenders producing 3.5 and 3.0 horsepower or would have paid substantially less for the Blenders.

209.    Defendant breached these express warranties because the Blenders cannot reach the claimed stated or "peak" horsepower, cannot operate at the claimed horsepower for any time material to consumer use, and the Pro Line Blender is incapable of reaching 3.5 horsepower even in laboratory testing that uses amperage that far exceeds that available during household operation.

210.    At the time the Blenders were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

211.    Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Ohio Plaintiff and the Ohio Class, by providing them with non-conforming Blenders and creating an artificially inflated price for those Blenders.

212.    Plaintiff Judith Anderson provided Defendant with reasonable notice before the filing of this lawsuit.

213.    Defendant's breach of the promises and warranties entitles Plaintiff Judith Anderson and the Ohio Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

**COUNT 9**
**Breach of Implied Warranty**
**(on behalf of the Maryland Class)**

214.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

215.    Plaintiff Eric Nathan brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

216.    The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sold.

217.    The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made on the container or label underlying the goods sold.

218.    The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate Defendant's Blender sales by creating consumer demand and consumer purchases.

219.    Plaintiff Eric Nathan and Maryland Class members are the intended beneficiaries of the implied warranty contract.

220.    Defendant is a merchant that sells Blenders.

221.    The Blenders are consumer goods.

222.    Defendant breached these implied contractual provisions because the Blenders cannot perform as Defendant promised.

223.    Defendant breached these implied contractual provisions because the Blenders do not conform to the promises and/or affirmations of fact made on the container or label as Defendant promised and/or affirmed.

224.    Defendant cannot provide a remedy or provide conforming goods because the motors used in the Blenders inherently cannot provide the represented power in ordinary, sustained operation.

225.     Defendant's breach of the implied warranty of merchantability injured the Plaintiffs and the Class by providing Blenders that could not do the work as warranted and caused Plaintiffs and the Class to pay a premium price for the Blenders.

226.     Defendant's actions breach implied warranties due consumers under Maryland law.

227.     Defendant's breach entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Blenders' actual performance in the type of use for which they are intended.

**COUNT 10**
**Breach of Implied Warranty**
**(on behalf of the Virginia Class)**

228.     Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

229.     Plaintiff Eric Nathan brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

230.     The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sold.

231.     The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made on the container or label underlying the goods sold.

232.     The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate Defendant's Blender sales by creating consumer demand and consumer purchases.

233.    Plaintiff Eric Nathan and Virginia Class members are the intended beneficiaries of the implied warranty contract.

234.    Defendant is a merchant that sells Blenders.

235.    The Blenders are consumer goods.

236.    Defendant breached these implied contractual provisions because the Blenders cannot perform as Defendant promised.

237.    Defendant breached these implied contractual provisions because the Blenders do not conform to the promises and/or affirmations of fact made on the container or label as Defendant promised and/or affirmed.

238.    Defendant cannot provide a remedy or provide conforming goods because the motors used in the Blenders inherently cannot provide the represented power in ordinary, sustained operation.

239.    Defendant's breach of the implied warranty of merchantability injured the Plaintiffs and the Class by providing Blenders that could not do the work as warranted and caused Plaintiffs and the Class to pay a premium price for the Blenders.

240.    Defendant's actions breach implied warranties due consumers under Virginia law.

241.    Defendant's breach entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform to the Blenders' actual performance in the type of use for which they are intended.

## COUNT 11
**Breach of Implied Warranty**
**(on behalf of the Illinois Class)**

242.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

243. Plaintiff Chris Smith brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

244. The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sold.

245. The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made on the container or label underlying the goods sold.

246. The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate Defendant's Blender sales by creating consumer demand and consumer purchases.

247. Plaintiff Chris Smith and Illinois Class members are the intended beneficiaries of the implied warranty contract.

248. Defendant is a merchant that sells Blenders.

249. The Blenders are consumer goods.

250. Defendant breached these implied contractual provisions because the Blenders cannot perform as Defendant promised.

251. Defendant breached these implied contractual provisions because the Blenders do not conform to the promises and/or affirmations of fact made on the container or label as Defendant promised and/or affirmed.

252. Defendant cannot provide a remedy or provide conforming goods because the motors used in the Blenders inherently cannot provide the represented power in ordinary, sustained operation.

253.    Defendant's breach of the implied warranty of merchantability injured the Plaintiffs and the Class by providing Blenders that could not do the work as warranted and caused Plaintiffs and the Class to pay a premium price for the Blenders.

254.    Defendant's actions breach implied warranties due consumers under Illinois law.

255.    Defendant's breach entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform to the Blenders' actual performance in the type of use for which they are intended.

### COUNT 12
### Breach of Implied Warranty
### (on behalf of the Ohio Class)

256.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

257.    Plaintiff Judith Anderson brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

258.     The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sold.

259.    The laws governing the sale of goods also imply a warranty that the goods conform to the promises or affirmations of fact made on the container or label underlying the goods sold.

260.    The purpose of these warranties is to protect consumers and consumers as the intended beneficiaries of those warranties, as the representations made to facilitate Defendant's Blender sales by creating consumer demand and consumer purchases.

261.     Plaintiff Anderson and Ohio Class members are the intended beneficiaries of the implied warranty contract.

262.     Defendant is a merchant that sells Blenders.

263.     The Blenders are consumer goods.

264.     Defendant breached these implied contractual provisions because the Blenders cannot perform as Defendant promised.

265.     Defendant breached these implied contractual provisions because the Blenders do not conform to the promises and/or affirmations of fact made on the container or label as Defendant promised and/or affirmed.

266.     Defendant cannot provide a remedy or provide conforming goods because the motors used in the Blenders inherently cannot provide the represented power in ordinary, sustained operation as promised and/or affirmed.

267.     Defendant's breach of the implied warranty of merchantability injured the Plaintiffs and the Class by providing Blenders that could not do the work as warranted and caused Plaintiffs and the Class to pay a premium price for the Blenders.

268.     Defendant's actions breach implied warranties due consumers under Ohio law.

269.     Defendant's breach entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform to the Blenders' actual performance in the type of use for which they are intended.

**COUNT 13**
**Breach of Implied Warranty – Magnuson-Moss Warranty Act**
**(on behalf of the Nationwide Class)**

270.     Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

271.    Plaintiffs bring this claim on behalf of the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

272.    The Blenders are consumer products within the meaning of 15 U.S.C. § 2301(1).

273.    Plaintiffs and the Class members are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

274.    Defendant is a supplier of consumer products and warrantors within the meaning of 15 U.S.C. §§2301(4) and (5).

275.    15 U.S.C. § 2310(d) is satisfied because Plaintiffs properly invoke the jurisdiction of this Court under CAFA.

276.    This same section—15 U.S.C. § 2310(d)—provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

277.    Defendant made implied warranties regarding the Blenders to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301(7). Defendant provided Plaintiffs and other Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

278.    Whirlpool breached the implied warranty of merchantability because the Blenders do not—and cannot—perform to the ordinary standard of use of a 3.0 or 3.5 HP blender during household operation. Specifically, the Blenders do not—and cannot—produce the power expected of a 3.0 or 3.5 HP blender under household current even at "peak," and certainly not during ordinary household use.

279.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the

Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

280.    As a direct and proximate result of Defendant's breach of the warranties regarding the horsepower representations, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

281.    Plaintiffs, individually and on behalf of all other Class members, seek all damages permitted by law in an amount to be proven at trial.

282.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

283.    Furthermore, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendant's violation of its implied warranties.

## COUNT 14
### Negligent Misrepresentation
### (on behalf of the Nationwide Class)

284.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

285.    Through Defendant's peak horsepower representations in its marketing and advertising of its Blenders, Defendant represents to Plaintiffs and Class members that the KitchenAid Blenders possess "3.5 Peak HP" and "3.0 Peak HP" while in household use.

286.    Plaintiffs and Class members were exposed to horsepower representations made by Defendant regarding the Blenders having specified peak horsepower capabilities. Those

representations were repeated in the marketplace on and through various websites, including Kitchenaid.com, Williams-Sonoma.com, Bestbuy.com, Kohls.com, Macys.com, Walmart.com, Target.com, Amazon.com, on KitchenAid packaging, and in-store authorized third-party retail displays.

287.    The horsepower representations were false, and at the time such false statements were made, Defendant knew or should have known of their false and misleading nature. Defendant acted with negligence and carelessness in ascertaining the truth of the statements. Defendant knew or should have known that they were unwilling or unable to include the quantities and horsepower specifications represented in its marketing materials and product packaging.  Defendant did not have any reasonable ground for believing it statements to be a true representation of the Blender's capabilities while in household use.

288.    Defendant intended that the Plaintiffs and other Class members rely on its misrepresentations and omissions when purchasing the Blenders.

289.    Defendant understood, and intended, that its current and future customers would view the horsepower representations discussed herein.

290.    Defendant had a duty to not make the herein-described misrepresentations, and to take steps to correct any misrepresentations or omissions before Plaintiffs and Class members purchased the Blenders.

291.    Defendant did not take any steps to correct or clarify the horsepower misleading representations about the qualities and specifications of the Blenders.

292.    Plaintiffs and Class members justifiably relied on Defendant's misrepresentations by purchasing the Blenders, and were unaware of the falsity of Defendant's statements at the time they were made.

293.    As a direct and proximate result of Defendant's misrepresentations, Plaintiffs and Class members suffered damages in the form of monies paid to purchase Defendant's product when they otherwise would not have purchased the Blenders or would only have agreed to purchase them at a lower price.

## <u>COUNT 15</u>
### Violation of Maryland's Unfair and Deceptive Trade Practices Action; Maryland Code, Commercial Law Article, § 13-301 *et seq.* (on behalf of the Maryland Class)

294.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

295.    Plaintiff Nathan and members of the Maryland Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

296.    Plaintiff Nathan and members of the Maryland Class are consumers within the meaning of the Maryland Consumer Unfair and Deceptive Trade Practices Act, § 13-301 *et seq.* (the "Maryland Act").

297.    The Maryland Act expressly notes that unfair or deceptive trade practices include:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
(2) Representation that"
> i.  Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

> *    *    *    *    *    *    *    *

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
> i. The promotion or sale of any consumer goods, consumer realty, or consumer service.

> *    *    *    *    *    *    *    *

298. Maryland Code, Commercial Law Article, § 13-408, a provision of Maryland's Consumer Protection Act, expressly authorizes civil actions by consumers, like Plaintiff Nathan.

299. Defendant engages in "trade" and "commerce" generally and as it pertains to the Blenders' distribution for sale to consumers within all the states listed herein.

300. Defendant places peak horsepower ratings on the Blenders' boxes and in point of sale materials supplied to retailers.

301. The peak horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

302. Defendant's representations regarding the Blenders' "peak" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

303. Defendant understood and intended that the representations about the Blenders' horsepower would influence consumer behavior.

304. Defendant understand it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

305. Defendant's misleading horsepower statements in point of sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for blender sales to consumers.

306. Defendant's acts and practices offend public policy as established by statute.

307. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

308. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Blenders were sold. As Defendant

knows, Plaintiff Nathan, Maryland Class members and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations.

309.    Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Blenders were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Blenders.

310.    Defendant's actions caused consumers to overpay for the Blenders.  These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

311.    Defendant's actions involved information material to Blender purchases. The misleading nature of the promises or affirmations on the box, at the point of sale, online and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Blenders.

312.    Because the representations about Blender power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Blenders' prices.

313.    Plaintiff Nathan and the Maryland Class purchased the Blenders for personal, family or household use.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Maryland Act.

314.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Nathan and the Maryland Class to suffer ascertainable losses when

they paid a premium for the Blenders above and beyond what they should have paid, and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

315. Plaintiff Nathan and the Maryland Class are entitled to recover damages and other appropriate relief, as alleged below.

## **COUNT 16**
**Violation of Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.01-198, -200**
**(on behalf of the Virginia Class)**

316. Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

317. Plaintiff Nathan and members of the Virginia Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

318. Plaintiff Nathan and members of the Virginia Class are consumers within the meaning of the Virginia's Consumer Protection Act; Va. Code Ann. §§ 59.01-198, -200 (the "Virginia Act").

319. The Virginia Act expressly prohibits "Misrepresenting that goods or services are of a particular quality standard, quality, grade, style or model" and/or "Using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction." Virginia Act, at § 59.1-200(5) and (14):

320. Defendant engages in "trade" and "commerce" generally and as it pertains to the Blenders' distribution for sale to consumers within all the states listed herein.

321. Defendant places peak horsepower ratings on the Blenders' boxes and in point of sale materials supplied to retailers.

322. The peak horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

323. Defendant's representations regarding the Blenders' "peak" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

324. Defendant understood and intended that the representations about the Blenders' horsepower would influence consumer behavior.

325. Defendant understand it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

326. Defendant's misleading horsepower statements in point of sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for blender sales to consumers.

327. Defendant's acts and practices offend public policy as established by statute.

328. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

329. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Blenders were sold. As Defendant knows, Plaintiff Nathan, Virginia Class members and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations.

330. Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Blenders were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Blenders.

331.    Defendant's actions caused consumers to overpay for the Blenders.   These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

332.    Defendant's actions involved information material to Blender purchases. The misleading nature of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Blenders.

333.    Because the representations about Blender power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Blenders' prices.

334.    Plaintiff Nathan and the Virginia Class purchased the Blenders for personal, family or household use.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Virginia Act.

335.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Nathan and the Virginia Class to suffer ascertainable losses when they paid a premium for the Blenders above and beyond what they should have paid, and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

336.    Plaintiff Nathan and the Virginia Class are entitled to recover damages and other appropriate relief.

## COUNT 17
### Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act; 815 ILCS 505/1, *et seq*. (on behalf of the Illinois Class)

337.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

338.    Plaintiff Smith and the Illinois Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

339.    Plaintiff Smith and members of the Illinois Class are consumers within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Act").

340.    The Illinois Act expressly forbids:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,." Approved August 15, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.
815 ILCS 505/2.

341.    Defendant engages in "trade" and "commerce" generally and as it pertains to the Blenders' distribution for sale to consumers within all the states listed herein.

342.    Defendant places peak horsepower ratings on the Blenders' boxes and in point of sale materials supplied to retailers.

343.    The peak horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

344.    Defendant's representations regarding the Blenders' "peak" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

345. Defendant understood and intended that the representations about the Blenders' horsepower would influence consumer behavior.

346. Defendant understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

347. Defendant's misleading horsepower statements in point of sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for blender sales to consumers.

348. Defendant's acts and practices offend public policy as established by statute.

349. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

350. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Blenders were sold. As Defendant knows, Plaintiff Smith, Illinois Class members and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations.

351. Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Blenders were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Blenders.

352. Defendant's actions caused consumers to overpay for the Blenders. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

353. Defendant's actions involved information material to Blender purchases. Defendant's actions involved information material to Blender purchases. The misleading nature

of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Blenders.

354.   Because the representations about Blender power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Blenders' prices.

355.   Plaintiff Smith and the Illinois Class purchased the Blenders for personal, family or household use.  Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Illinois Act.

356.   The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Smith and the Illinois Class to suffer ascertainable losses when they paid a premium for the Blenders above and beyond what they should have paid and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

357.   Plaintiff Smith and the Illinois Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT 18
**Violation of Wisconsin Deceptive Trade Practices Act; Wis. Stat. 100.18**
**(on behalf of the Wisconsin Class)**

358.   Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

359.   Plaintiff Johnson and the Wisconsin Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

360. Defendant represented to Plaintiff Johnson, members of the Wisconsin Class, and the general public that the Blenders contained 3.0 horsepower and 3.5 horsepower.

361. Defendant's representations to Plaintiff Johnson, members of the Wisconsin Class, and the public relating to the 3.0 horsepower and 3.5 horsepower in the Blenders was made with the intent that they be relied upon and so that consumers would purchase the Blenders.

362. Plaintiff Johnson was a member of the public when he reviewed and evaluated Defendant's representation that the Pro Line Blender produced 3.5 horsepower.

363. But for Defendant's false representations about the Blenders containing 3.0 horsepower and 3.5 horsepower, Plaintiff Johnson and the Wisconsin Class would not have purchased Whirlpool's Blenders.

364. Defendant places peak horsepower ratings on the Blenders' boxes and in point of sale materials supplied to retailers.

365. The peak horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

366. Defendant's representations regarding the Blenders' "peak" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

367. Defendant understood and intended that the representations about the Blenders' horsepower would influence consumer behavior.

368. Defendant understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

369. Defendant's misleading horsepower statements in point of sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for blender sales to consumers.

370. Defendant's acts and practices offend public policy as established by statute.

371. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

372. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Blenders were sold. As Defendant knows, Plaintiff Johnson, Wisconsin Class members and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations.

373. Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Blenders were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Blenders.

374. Defendant's actions caused consumers to overpay for the Blenders. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

375. Defendant's actions involved information material to Blender purchases. The misleading nature of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Blenders.

376. Because the representations about Blender power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Blenders' prices.

377. Plaintiff Johnson and the Wisconsin Class purchased the Blenders for personal, family or household use. Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Wisconsin Act.

378. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Johnson and the Wisconsin Class to suffer ascertainable losses when they paid a premium for the Blenders above and beyond what they should have paid and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

379. Plaintiff Johnson and the Wisconsin Class are entitled to recover damages and other appropriate relief, as alleged below.

**COUNT 19**
**Breach of New York General Business Law §§ 349 and 350**
**(on behalf of the New York Class)**

380. Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

381. Plaintiff Tschernjawski and the New York Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

382. Defendant participated in deceptive acts by overstating the horsepower capacity in the Blenders. Specifically, Defendant's representations in marketing materials, advertisements, publications were deceptive in that they stated the Blenders were capable of performing at 3.0

and 3.5 horsepower even though the Blenders could not operate at such level of horsepower at any time during household use. Furthermore, the Pro Line Blender is incapable of producing 3.5 horsepower even in pristine laboratory testing conditions.

383.    As such, Defendant's misleading statements regarding the Blenders' horsepower capacity are false and deceptive.

384.    Defendant's deceptive acts in falsely stating the Blenders' horsepower to the public, Plaintiff Tschernjawski and the New York Class were misleading in a material way.

385.    Plaintiff Tschernjawski and the New York Class purchased the Blenders for personal, family or household use. Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the New York Act.

386.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff Tschernjawski and the New York Class to suffer an ascertainable loss when they paid a premium for the Blenders above and beyond what they should have paid and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

387.    Plaintiff Tschernjawski and the New York Class are entitled to recover damages and other appropriate relief, as alleged below.

**COUNT 20**
**Violation of Ohio Consumer Sales Practices Act; Ohio Revised Code § 1345.01 *et seq*.**
**(on behalf of the Ohio Class)**

388.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

389. Plaintiff Anderson and the Ohio Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

390. Defendant is a supplier within the definition of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 ("Ohio Act"), as it supplied and manufactured the Blender Judith Anderson and members of the Ohio Class purchased.

391. Judith Anderson and members of the Ohio Class are consumers as defined in the Ohio Act.

392. The Ohio Act notes that it is deceptive for Defendant to state that the Blenders "ha[ve] sponsorship, approval, performance characteristics, accessories, uses, or benefits that [they] do not have;"). *See* Ohio Act, § 1345.02(B)(1).

393. Judith Anderson and members of the Ohio Class's purchase of Blenders after reviewing Defendant's representations that the Blenders contained 3.0 horsepower and 3.5 horsepower was a consumer transaction.

394. But for Defendant's misleading statements about the Blenders containing 3.0 horsepower and 3.5 horsepower, Ohio Plaintiff and the Ohio Class would not have purchased their Blenders or would have paid substantially less for the Blenders.

395. Defendant places peak horsepower ratings on the Blenders' boxes and on point of sale materials supplied to retailers.

396. The peak horsepower promises and representations are misleading and deceptive for the reasons discussed herein.

397. Defendant's representations regarding the Blenders' "peak" horsepower are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

398. Defendant understood and intended that the representations about the Blenders' horsepower would influence consumer behavior.

399. Defendant understand it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its products.

400. Defendant's misleading horsepower statements in point of sale materials, on boxes and on its website constitute unfair methods of competition and unfair and/or deceptive acts or practices in the conduct of trade or commerce for blender sales to consumers.

401. Defendant's acts and practices offend public policy as established by statute.

402. Defendant's acts and practices are immoral, unethical, oppressive and unscrupulous.

403. Defendant's conduct substantially injured actual and potential consumers, the public and competition in each of the states in which the Blenders were sold. As Defendant knows, Judith Anderson, Ohio Class members and consumers would not pay the prices they paid absent Defendant's false and misleading horsepower representations or would have paid substantially less for the Blenders.

404. Defendant's conduct materially affected available information regarding its products to consumers nationwide and in each state in which the Blenders were sold. Defendant's conduct thus improperly distorted the information available to the public regarding the Blenders.

405. Defendant's actions caused consumers to overpay for the Blenders. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

406. Defendant's actions involved information material to Blender purchases. The misleading nature of the promise or affirmations on the box, at the point of sale, online, and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Blenders.

407. Because the representations about Blender power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Blenders' prices.

408. Judith Anderson and the Ohio Class purchased the Blenders for personal, family or household use. Thus, the practices discussed above constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the Ohio Act.

409. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Judith Anderson and the Ohio Class to suffer an ascertainable loss when they paid a premium for the Blenders above and beyond what they should have paid and provided Defendant more in revenues for the Blenders than it could have received absent its false and misleading representations.

410. Defendant was on notice before the filing of this suit that its conduct in misleading consumers about the Blenders' characteristics was a violation of the Ohio Act. *See Lyons v. Brown*, 332 N.E.2d 380, 384 (Ohio Com. Pl. 1974) (concluding that defendant violated the Ohio Act by misleading consumers about the quality of appliances); *Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, at *4 (N.D. Ohio Oct. 25, 2016) (finding that *Lyons v. Brown* was sufficient to give defendant pre-suit notice that misleading statements about an appliance's characteristics had been found to violate the Ohio Act).

411.    Defendant was also on notice before the filing of this suit that its conduct in misleading consumers about the Blenders' characteristics was a violation of the Ohio Act because the actions taken by Defendant are "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the [Ohio] Revised code before the consumer transaction on which [this] action is based." Ohio Revised Code § 1345.09(B). Specifically, Ohio Administrative Code § 109:2-4-02(A)(1) states:

> It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

412.    Judith Anderson and the Ohio Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT 21
### Unjust Enrichment
### (on behalf of the Maryland Class)

413.    Plaintiffs restate and incorporate the factual allegations in paragraphs 1-108 herein.

414.    Plaintiff Nathan and the Maryland Class bring this count individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

415.    Plaintiff Nathan and the Maryland Class plead this claim in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

416.    Defendant's horsepower misrepresentations, as noted herein, enabled Defendant to receive more money for the Blenders than it would have absent the misrepresentations.

Plaintiff Nathan and the Maryland Class conferred a benefit on Defendant by purchasing its Blenders.

417.    Defendant knowingly received and appreciated this windfall because it knew and understood that consumers would pay more for Blenders promoted to have higher horsepower, enabling Defendant to receive more money for the Blenders than the Blenders' actual performance in consumer use would merit.

418.    Plaintiff Nathan and Maryland Class paid more for the Blenders than they would have absent Defendant's misrepresentations.

419.    Defendant's misrepresentations serve no legitimate business purpose.

420.    Plaintiff Nathan and the Maryland Class lack an adequate remedy at law.

421.    Allowing Defendant to retain the additional revenue obtained by misrepresenting the Blenders' horsepower would be unjust and would reward unconscionable and illegal behavior.   Because consumer demand allows Blender sales and Defendant advertised and promoted with misleading statements knowing it would create demand for the Blenders at a premium price, Defendant's actions caused Defendant to reap unwarranted revenue. For these reasons, Defendant should disgorge the excess revenue received for the benefit of Plaintiff Nathan and the Maryland Class.

### COUNT 22
### Unjust Enrichment
### (on behalf of the Virginia Class)

422.    Plaintiffs restate and incorporate the factual allegations in paragraphs 1-108 herein.

423.    Plaintiff Nathan and the Virginia Class bring this count individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

424.     Plaintiff Nathan and the Virginia Class plead this claim in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

425.     Defendant's horsepower misrepresentations, as noted herein, enabled Defendant to receive more money for the Blenders than it would have absent the misrepresentations. Plaintiff Nathan and the Virginia Class conferred a benefit on Defendant by purchasing its Blenders.

426.     Defendant knowingly received this windfall because it knew and understood that consumers would pay more for Blenders promoted to have higher horsepower, enabling Defendant to receive more money for the Blenders than the Blenders' actual performance in consumer use would merit.

427.     Plaintiff Nathan and the Virginia Class paid more for the Blenders than they would have absent Defendant's misrepresentations.

428.     Defendant's misrepresentations serve no legitimate business purpose.

429.     Plaintiff Nathan and the Virginia Class lack an adequate remedy at law.

430.     Allowing Defendant to retain the additional revenue obtained by misrepresenting the Blenders' horsepower would be unjust and would reward unconscionable and illegal behavior.  Because consumer demand allows Blender sales and Defendant advertised and promoted with misleading statements knowing they would create demand for the Blenders at a premium price, Defendant's actions caused Defendant to reap unwarranted revenue. For these reasons, Defendant should disgorge the excess revenue received for the benefit of Plaintiff Nathan and the Virginia Class.


**COUNT 23**
**Unjust Enrichment**

**(on behalf of the Illinois Class)**

431.     Plaintiffs restate and incorporate the factual allegations in paragraphs 1-108 herein.

432.     Plaintiff Smith and the Illinois Class bring this count individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

433.     Plaintiff Smith and the Illinois Class plead this claim in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

434.     Defendant's horsepower misrepresentations, as noted herein, enabled Defendant to receive more money for the Blenders than it would have absent the misrepresentations. Plaintiff Smith and the Illinois Class conferred a benefit on Defendant by purchasing their Blenders.

435.     Defendant knowingly received this windfall because they knew and understood that consumers would pay more for Blenders promoted to have higher horsepower, enabling Defendant to receive more money for the Blenders than the Blenders' actual performance in consumer use would merit.

436.     Plaintiff Smith and the Illinois Class paid more for the Blenders than they would have absent Defendant's misrepresentations.

437.     Defendant's misrepresentations serve no legitimate business purpose.

438.     Defendant's retention of the benefit through forcing consumers, like Plaintiff Smith and the Illinois Class, to pay for Blenders with overstated horsepower violates principles of justice, equity, and good conscience.

439.     Plaintiff Smith and the Illinois Class lack an adequate remedy at law.

440. Allowing Defendant to retain the additional revenue obtained by misrepresenting the Blenders' horsepower would be unjust and would reward unconscionable and illegal behavior. Because consumer demand allows Blender sales and Defendant advertised and promoted with misleading statements knowing it would create demand for the Blenders at a premium price, Defendant's actions caused Defendant to reap unwarranted revenue. For these reasons, Defendant should disgorge the excess revenue received for the benefit of Plaintiff Smith and the Illinois Class.

**COUNT 24**
**Unjust Enrichment**
**(on behalf of the New York Class**

441. Plaintiffs restate and incorporate the factual allegations in paragraphs 1-108 herein.

442. Plaintiff Tschernjawski and the New York Class bring this count individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

443. Plaintiff Tschernjawski and the New York Class plead this claim in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

444. Defendant's horsepower misrepresentations, as noted herein, enabled Defendant to receive more money for the Blenders than it would have absent the misrepresentations. Plaintiff Tschernjawski and the New York Class conferred a benefit on Defendant by purchasing its Blenders.

445. Defendant knowingly received this windfall because it knew and understood that consumers would pay more for Blenders promoted to have higher horsepower, enabling Defendant to receive more money for the Blenders than the Blenders' actual performance in consumer use would merit.

446.    Plaintiff Tschernjawski and the New York Class paid more for the Blenders than they would have absent Defendant's misrepresentations.

447.    Defendant's misrepresentations serve no legitimate business purpose.

448.    Plaintiff Tschernjawski and the New York Class lack an adequate remedy at law.

449.    Allowing Defendant to retain the additional revenue obtained by misrepresenting the Blenders' horsepower would be unjust and would reward unconscionable and illegal behavior.  Because consumer demand allows Blender sales, Blender sales at the prices Whirlpool was able to charge,  and Whirlpool advertised and promoted with misleading statements knowing it would create demand for the Blenders at a premium price, Whirlpool's actions caused it to reap unwarranted revenue. For these reasons, Defendant should disgorge the excess revenue received for the benefit of Plaintiff Tschernjawski and the New York Class.

## COUNT 25
### Unjust Enrichment
### (on behalf of the Wisconsin Class)

450.    Plaintiffs restate and incorporate the factual allegations in paragraphs 1-108 herein.

451.    Plaintiff Johnson and the Wisconsin Class bring this count individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

452.    Plaintiff Johnson and the Wisconsin Class plead this claim in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

453.    Defendant's horsepower misrepresentations, as noted herein, enabled Defendant to receive more money for the Blenders than it would have absent the misrepresentations. Plaintiff Johnson and the Wisconsin Class conferred a benefit on Defendant by purchasing its Blenders.

454.    Defendant knowingly received this windfall because it knew and understood that consumers would pay more for Blenders promoted to have higher horsepower, enabling Defendant to receive more money for the Blenders than the Blenders' actual performance in consumer use would merit.

455.    Plaintiff Johnson and the Wisconsin Class paid more for the Blenders than they would have absent Defendant's misrepresentations.

456.    Defendant's misrepresentations serve no legitimate business purpose.

457.    Plaintiff Johnson and the Wisconsin Class lack an adequate remedy at law.

458.    Allowing Defendant to retain the additional revenue obtained by misrepresenting the Blenders' horsepower would be unjust and would reward unconscionable and illegal behavior. Because consumer demand allows Blender sales and Defendant advertised and promoted with misleading statements knowing it would create demand for the Blenders at a premium price, Defendant's actions caused Defendant to reap unwarranted revenue. For these reasons, Defendant should disgorge the excess revenue received for the benefit of Plaintiff Johnson and the Wisconsin Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1.  Certify the proposed Class and Subclasses and appoint Plaintiffs and their legal counsel to represent the Class and Subclasses;

2.  Find in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

3.  Declare that Defendant's conduct violated the statutes referenced herein;

4. Award Damages, including compensatory, exemplary, punitive, and statutory to Plaintiffs, the Class, and the Subclasses in an amount to be determined at trial;

5. Grant restitution to Plaintiffs, the Class and the Subclasses and require Defendant to disgorge its ill-gotten gains;

6. Order injunctive relief by enjoining Defendant from continuing to promote its Blenders using false and misleading horsepower representations;

7. Award Plaintiffs, the Class and the Subclasses reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8. Declare the parties' rights and obligations under the warranties applicable to the Blender sales and under the law of the relevant states;

9. Award Plaintiffs, the Class and the Subclasses pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

10. Order any such other and further relief the Court deems just and equitable.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Terence R. Coates*
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*

Nathan D. Prosser (*pro hac vice*)

HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina. MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

Mark J. Schirmer (*pro hac vice forthcoming*)
STRAUS & BOIES, LLP
1355 Lynnfield Road, Suite 245
Memphis, TN 38119
Telephone: (901) 683-4522
*mschirmer@straus-boies.com*

*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that on November 5, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on CM/ECF.

/s/ *Terence R. Coates*
Terence R. Coates (0085579)