IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC NATHAN, *et al.*,                    :

        Plaintiffs,

    v.                    :     Case No. 3:19-cv-226

WHIRLPOOL CORPORATION,      JUDGE WALTER H. RICE

        Defendant.                    :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART WHIRLPOOL CORPORATION'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT (DOC. #21);
PLAINTIFFS GIVEN LEAVE TO AMEND COMPLAINT WITHIN 30
CALENDAR DAYS

---

Plaintiffs Eric Nathan, Chris Smith, William Johnson, Richard Tschernjawski and Judith Anderson filed suit against Whirlpool Corporation on behalf of themselves and similarly-situated purchasers of certain KitchenAid blenders.[1]  The Amended Class Action Complaint asserts numerous claims of breach of express and implied warranty, negligent misrepresentation, consumer fraud, and unjust enrichment.  Doc. #17.

This matter is currently before the Court on Whirlpool Corporation's Motion to Dismiss Plaintiffs' Amended Class Action Complaint, Doc. #21.

---

[1]  Whirlpool manufactures the KitchenAid brand of appliances.

## I.    Background and Procedural History

In the First Amended Class Action Complaint, Plaintiffs allege that Whirlpool represents, in its marketing materials and on its product packaging, that two series of its KitchenAid blenders ("the Blenders") are more powerful than they actually are.  The product packaging states that the Pro Line series has a 3.5 peak horsepower motor, and the High Performance Series has a 3.0 peak horsepower motor.  Plaintiffs, however, maintain that "Defendant's misrepresentation of 'peak' horsepower does not reflect the Blenders' actual horsepower output while in household operation."  Doc. #17, PageID#194.  According to Plaintiffs, the actual horsepower output in the *pitcher* of the Blenders is considerably less.

Plaintiffs further contend that Whirlpool's representations are "designed to mislead consumers into believing the Blenders have much more power than they actually have, leading to consumers overpaying for Blenders and/or causing consumers to purchase the Blenders instead of other manufacturers' blenders or less expensive blenders."  *Id.*

Plaintiffs filed suit under the Class Action Fairness Act, 28 U.S.C. § 1332(d).[2]  They seek certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of a nationwide class, and various subclasses of purchasers from Maryland, Virginia, Illinois, Wisconsin, New York and Ohio.  The Amended Class Action Complaint, Doc. #17, asserts claims of breach of express warranty (Counts I-8), breach of

---

[2]  Plaintiffs estimate that there are thousands of putative class members across the United States and the aggregate amount in controversy exceeds $5 million.

implied warranty (Counts 9-13), negligent misrepresentation (Count 14), statutory consumer fraud (Counts 15-20), and unjust enrichment (Counts 21-25).

Whirlpool has moved to dismiss all counts pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). Doc. #21. That motion to dismiss is fully briefed and ripe for decision. *See* Docs. ##22, 23.


## II.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

3

true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

III.   Discussion

   A.   Warranty Claims (Counts 1-13)

      1.   State Law Claims of Breach of Express and Implied Warranty (Counts 1, 3-12)

Counts 1, 3, 4, 5, 6, 7 and 8 of the First Amended Complaint assert what appear to be common law claims of breach of express warranty.[3]  Plaintiffs generally allege that the representations concerning peak horsepower constitute express warranties, that Whirlpool breached those express warranties by failing to provide conforming goods, and that Plaintiffs were damaged as a result.  Counts 9, 10, 11 and 12 assert what appear to be common law claims of breach of implied warranty.[4]  Plaintiffs generally allege that Whirlpool has breached implied warranties that the goods conform to representations made and are fit for their intended purpose.

In its Motion to Dismiss, Whirlpool argues that all of these state law claims must be dismissed because they are governed by the Uniform Commercial Code ("UCC") and cannot be pled at common law.  *See Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 615 (D. Md. 2014); *Sutherlin v. Lowe's Home Ctrs.,*

---

[3]   Count 1 is brought on behalf of a nationwide class, Count 3 on behalf of the Maryland class, Count 4 on behalf of the Virginia class, Count 5 on behalf of the Illinois class, Count 6 on behalf of the Wisconsin class, Count 7 on behalf of the New York class, and Count 8 on behalf of the Ohio class.

[4]   Count 9 is brought on behalf of the Maryland class, Count 10 on behalf of the Virginia class, Count 11 on behalf of the Illinois class, and Count 12 on behalf of the Ohio class.

*LLC*, No. 3:14cv368, 2014 WL 4748530, at *2 (E.D. Va. Sep. 23, 2014);

*Thacker v. Menard, Inc.*, 105 F.3d 382, 385 (7th Cir. 1997); *Mekertichian v.*

*Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004); *Twin*

*Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 213-14 (E.D. Wis. 1984);

*Haley v. Kolbe & Kolbe Millwork Co., Inc.*, No. 14-cv-99, 2015 WL 9255571, at

*5 (W.D. Wis. Dec. 18, 2015); *Martino v. MarineMax Ne., LLC*, No. 17-CV-4708,

2018 WL 6199557, at *4 (E.D.N.Y. Nov. 28, 2018); *Miles v. Kohli & Kaliher*

*Assoc., Ltd.*, 917 F.2d 235, 256 (6th Cir. 1990); *Curl v. Volkswagen of Am., Inc.*,

114 Ohio St. 3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶26 (Ohio 2007).

Plaintiffs concede that these claims are governed by the UCC rather than

common law.  They argue, however, that the absence of citations to the UCC

statutes of each state does not transform their claims into common law claims.

Nevertheless, Plaintiffs seek leave to amend their Complaint if the Court believes

otherwise.

Based on the above citations, the Court finds that, in pleading these claims

as common law claims, Plaintiffs have failed to state a claim upon which relief may

be granted.  Counts 1, and 3-12 are subject to dismissal on this basis.  The only

question is whether Plaintiffs should be given leave to amend their Complaint to

plead some, or all, of their breach of express warranty and breach of implied

warranty claims under the UCC.

Although the Court must freely give leave to amend when justice so

requires, Fed. R. Civ. P. 15(a), it need not grant leave if amendment would be

futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Whirlpool argues that it would be futile to give Plaintiffs leave to amend their Complaint to assert these claims under the UCC because: (a) Plaintiffs failed to satisfy UCC notice requirements; (b) as to Counts 3, 5-6 and 11-12, Plaintiffs lack the requisite privity; and (c) as to Counts 1 and 3-8, the additional information included in the Blenders' Use and Care Guides is fatal to any express warranty claims under the UCC.[5]

### a. Notice Requirements

Under the UCC, a buyer is barred from any remedy if he fails to notify the seller of the breach within a reasonable time after he discovers or should have discovered the breach. *See* MD Code, Commercial Law, § 2-607(3)(a); VA Code Ann. § 8.2-607(3)(a); 810 ILCS § 5/2-607(3)(a); W.S.A. § 402.607(3)(a); McKinney's Uniform Commercial Code § 2-607(3)(a); R.C. § 1302.65(C)(1). "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action. UCC § 1-204(2).

On March 22, 2019, counsel for Plaintiffs Eric Nathan and Richard Tschernjawski sent Notice of the alleged breach to KitchenAid, on behalf of Nathan, Tschernjawski "and all similarly situated consumers nationwide," Doc.

---

[5] The Court notes that, even if Plaintiff had properly pled their claims under the UCC, Whirlpool would likely have raised these same arguments in a motion to dismiss.

#21-3, PageID##377-78.[6]  The first question is whether this letter is sufficient to satisfy the notice requirement as to the *other* named Plaintiffs—Chris Smith, who asserted a breach of express warranty claim (Count 5) and a breach of implied warranty claim (Count 11) on behalf of an Illinois class, William Johnson, who asserted a breach of express warranty claim on behalf of a Wisconsin class (Count 6), and Judith Anderson, who asserted a breach of express warranty claim (Count 8) and a breach of implied warranty claim (Count 12) on behalf of an Ohio class.

Citing *In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013), Whirlpool argues that the failure of Smith, Johnson and Anderson to provide individual pre-suit notice to Whirlpool is fatal to their warranty claims.  Notably, Plaintiffs make no effort to respond to this argument.

In *Frito-Lay*, the court, albeit in dicta, found that notice sent by an attorney on behalf of his California client "and other consumers," was "likely insufficient" as to those "other consumers."  *Id.* at *28.  *See also Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055 (W.D. Wis. 2018) ("[T]he notice requirement is individualized . . . In a class action, the question whether a given class member provided reasonably timely notice would be particular to that individual, and would presumably require that each plaintiff actually have provided notice."); *Connick v.*

---

[6]  Given that this Notice is referred to in the Amended Class Action Complaint, Doc. #17, PageID#224, and is central to Plaintiffs' claims, the Court may consider it without converting the motion to dismiss into a motion for summary judgment. *Bassett,* 528 F.3d at 430.

8

*Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 590 (Ill. 1996) (holding that the notice requirement is satisfied "only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer."); *Porcell v. Lincoln Wood Prod., Inc.*, 713 F. Supp. 2d 1305, 1316 (D.N.M. 2010) (plaintiff's theory, that the filing of a previous lawsuit that was never certified as a class action constituted sufficient individual notice under UCC § 2-607(3) for all class members, was "dubious" and would likely fail "under the law of one or more jurisdictions."); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2014 WL 3557189, *8 (M.D. Pa. July 17, 2014) (dismissing one named plaintiff's warranty claims "for failure to allege that he provided independent notice of the breach prior to initiation of the litigation.").

Based on these cases, the Court concludes that the March 22, 2019, notice is insufficient as to Plaintiffs Smith, Johnson and Anderson.  Plaintiffs' proposed amendment, asserting breach of express warranty claims and breach of implied warranty claims under the UCC instead of under common law, would not cure this defect.  The Court therefore DISMISSES Counts 5, 6, 8, 11 and 12 WITH PREJUDICE.[7]

The Court turns next to the breach of warranty claims brought by Plaintiffs Eric Nathan and Richard Tschernjawski.  Nathan brought breach of express

---

[7]  The Court does not reach Whirlpool's alternative argument that amendment of Counts 5, 6, 11 and 12 would be futile because Plaintiffs lack the requisite privity.

warranty claims and breach of implied warranty claims on behalf of a Maryland class (Counts 3 and 9) and a Virginia class (Counts 4 and 10).[8]  Plaintiff Richard Tschernjawski brought a breach of express warranty claim on behalf of a New York class (Count 7).

Although it is undisputed that Nathan and Tschernjawski sent Notice of the alleged breaches to Whirlpool prior to filing suit, Whirlpool argues that their claims are not viable because: (1) the factual allegations included in the Amended Class Action Complaint are insufficient to show that they notified KitchenAid within a reasonable time after they discovered or should have discovered the breaches; and (2) the 16-month delay between the date Nathan purchased the Blender and the date he notified Whirlpool of the alleged breach, and the 10-month delay between the date Tschernjawski purchased the Blender and the date he notified Whirlpool are unreasonable as a matter of law.[9]

Whirlpool notes that neither the March 22, 2019, letter, nor the Amended Class Action Complaint indicates *when* Nathan and Tschernjawski discovered the alleged breaches.  In *Tyman v. Pfizer, Inc.*, No. 16-cv-6941, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017), the court held that "[s]ince Plaintiffs fail to allege any facts that would permit the Court to conclude that they notified Pfizer of the

---

[8]  Although Nathan is a resident of the State of Maryland, he purchased his Blender in Virginia.  Doc. #17, PageID#195.

[9]  According to the First Amended Complaint, Nathan bought his Blender on November 24, 2017, Doc. #17, PageID#195, and Tschernjawski bought his Blender on May 28, 2018.  *Id.* at PageID#197.  They did not notify Whirlpool of the alleged breaches until March 22, 2019.  Doc. #21, PageID##377-78.

alleged breaches within a reasonable time after discovering them, they are barred from any remedy." *Id.* at *23 (internal quotation omitted). Whirlpool argues that the same is true here.

Given that this alleged pleading defect can be easily cured by the filing of a Second Amended Complaint, *see id.,* the Court turns instead to the second issue of whether the 16-month and 10-month delays between the dates the Plaintiffs bought their Blenders and the date they notified Whirlpool of the alleged breaches were unreasonable as a matter of law.

What constitutes a reasonable time for notifying the seller of the breach is typically a question of fact for the jury. However, "[w]here the facts are undisputed and but one inference can be drawn therefrom as to the reasonableness of the notice, the question is one of law." *Env't Elements Corp. v. Mayer Pollack Steel Corp.*, 497 F. Supp. 58, 61 (D. Md. 1980). *See also Begley v. Jeep Corp.*, 491 F. Supp. 63, 65 (W.D. Va. 1980) (holding that whether notice was given within a reasonable time is ordinarily a "question of fact reserved for the jury," but "if the evidence is clear, the court can rule as a matter of law that a party failed to give proper notice.").

Whirlpool cites to a number of cases that have held that delays of 5-12 months were unreasonable as a matter of law. *See, e.g., Wilson v. Tuxen*, 754 N.W.2d 220, 233 (Wis. Ct. App. 2008) (10 months); *Wilke Metal Prods., Inc. v. David Architectural Metals, Inc.*, 236 N.E.2d 303, 306 (Ill. App. Ct. 1968) (6 months); *Liberty Steel Prod., Inc. v. Franco Steel Corp.*, 57 F. Supp. 2d 459, 467

11

(N.D. Ohio 1999) (between 10 and 12 months); *Bangor Clothing Co., Inc. v. Superior Sportswear Corp.*, 22 A.D.2d 864, 864 (N.Y. App. Div. 1964) (5 months).

Under the circumstances presented here, however, the Court cannot find that the delay in giving Whirlpool notice of the alleged breach was unreasonable as a matter of law. As previously noted, Nathan and Tschernjawski have not yet indicated when they actually discovered the alleged breaches. Whirlpool argues that, regardless of when that occurred, they should have discovered the breaches and provided notice long before March 22, 2019. Plaintiffs correctly point out, however, that the average consumer lacks experience estimating horsepower. Accordingly, it may not have been immediately obvious that the horsepower in the Blender pitchers did not match the horsepower advertised on the box. In the Court's view, a jury will have to determine whether Nathan and Tschernjawski gave notice within a reasonable time after they discovered or should have discovered the alleged breaches.

Accordingly, with respect to the issue of adequate notice, the Court finds that it would not necessarily be futile to allow Plaintiffs to amend their Complaint to assert Counts 3, 4, 7, 9 and 10 under the UCC.

### b. Privity

Whirlpool argues that there is an additional reason why it would be futile to grant Plaintiffs leave to amend Count 3, Nathan's breach of express warranty claim brought on behalf of the Maryland class. Absent a claim of personal injury,

12

Maryland requires privity of contract in order to pursue an action for breach of express warranty. *See Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 280, 329 A.2d 28 (1974); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983). The only recognized exceptions to this rule are third-party beneficiaries, equitable estoppel, assignment, agency relationships, and successors in interest. *H&M Co., Inc. v. Tech. Heat Transfer Servs., Inc.*, No. 14-1518, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015).

Nathan bought his Blender from Best Buy, a third-party retailer. Doc. #17, PageID#195. Because he is not in privity with Whirlpool, and none of the recognized exceptions applies, his claim is subject to dismissal. *See Palmer v. CVS Health*, No. 17-938, 2019 WL 6529163, at * 6 (D. Md. Dec. 4, 2019) (dismissing breach of express warranty claim against manufacturer where plaintiff failed to establish privity of contract).

Nathan maintains that he relied on Whirlpool's express statements concerning the horsepower specifications and expected that Whirlpool, and not Best Buy, would be the party responsible for providing warranty services. Doc. #17, PageID#230. This, however, is insufficient to bring his allegations within one of the recognized exceptions to the privity requirement. For example, he does not allege that Whirlpool behaved in such a way that he was justified in believing that Whirlpool was the actual seller, or that Whirlpool actually provided warranty services to him at some point in time. *See H&M*, 2015 WL 1472000, at *4 (discussing scenarios in which an estoppel theory might apply).

13

Accordingly, the Court agrees with Whirlpool that it would be futile to allow Plaintiffs to amend the Complaint to assert Count 3 under the UCC. Count 3 is therefore DISMISSED WITH PREJUDICE.

### c. Use and Care Guides

Finally, Whirlpool argues that it would be futile to allow Plaintiffs to amend the Complaint to assert Counts 4 and 7 under the UCC because the additional information included in the Blenders' Use and Care Guides must also be considered in determining the scope of the warranty, and is fatal to any breach of express warranty claims.

Under the UCC, express warranties by the seller are created as follows: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." UCC § 2-313(1). In addition, "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* Official Comment 7 to § 2-313, however, states, "[t]he precise time when words of description or affirmation are made . . . is not material. The sole question is whether the language . . . [is] fairly to be regarded as part of the contract."

Whirlpool maintains that the distinction between the peak horsepower in the Blenders' motors and the actual horsepower output in the Blenders' pitchers is explained in the Use and Care Guides, which are included inside the product

14

packaging and available on the KitchenAid website, and that this description must fairly be regarded as part of the contract.

In support, Whirlpool submits an affidavit of one of its attorneys, Daniel Guisbond.  Doc. #21-1, PageID##333-34.  He visited the web page associated with the web address referred to in paragraph 64 of Plaintiffs' Amended Complaint.  From that web page, he downloaded a copy of the Use and Care Guide for the Pro Line Series Blender, Model No. KSB7068.  *Id.*  The Use and Care Guide contains a section entitled "Motor Horsepower."  It states:

> Our 3.5 peak horsepower (HP) motor reference reflects the horsepower output of the motor itself and not the Blender's horsepower output in the Blender pitcher.  As with any blender, the power output in the pitcher is not the same as the horsepower of the motor itself.  This motor delivers 2.45 peak HP in the pitcher enabling your Blender to deliver robust power for all your recipes.

Ex. A to Guisbond Decl., Doc. #21-1, PageID#339.

The Court, however, cannot consider the content of the Use and Care Guides on a motion to dismiss unless it converts the motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) (regarding presentation of matters outside the pleadings not excluded by the court).  Plaintiffs correctly point out that the particular web page from which Guisbond accessed the Use and Care Guide is not referenced in the Amended Complaint.  As the court held in *Foremost Farms, USA, Coop. v. Diamond V Mills, Inc.*, No. 16-cv-551, 2017 WL 1390699, at *2 n.1 (W.D. Wis. Apr. 18, 2017), for purposes of a motion to dismiss, a reference in the complaint to one document contained on a website does not open the door for

15

the Court to consider all documents accessible from that same website. Whirlpool's argument is therefore premature. Although it can certainly be raised again in a motion for summary judgment, it does not render futile Plaintiffs' request to amend their Complaint to assert Counts 4 and 7 under the UCC.

To summarize, the Court DISMISSES Counts 3, 5, 6, 8, 11 and 12 WITH PREJUDICE. Counts 1, 4, 7, 9 and 10 are DISMISSED WITHOUT PREJUDICE. The Court grants Plaintiffs leave to file a Second Amended Class Action Complaint within 30 calendar days of the date of this Decision and Entry, to assert Counts 1, 4, 7, 9, and 10 under the UCC.

### 2.    Magnuson Moss Warranty Act ("MMWA") Claims

Count 2 asserts a breach of express warranty claim under the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, on behalf of the nationwide class. Count 13 asserts a nationwide breach of implied warranty claim under the MMWA. The MMWA "establishes a federal right of action for consumers to enforce written or implied warranties against suppliers, warrantors, or service contractors." *Curl v. Volkswagen of Am., Inc.*, 2007-Ohio-3609, ¶ 10, 114 Ohio St. 3d 266, 871 N.E.2d 1141.

The Sixth Circuit has held that the viability of a MMWA claim is directly dependent on the viability of an actionable warranty claim under state law. *Temple v. Fleetwood Enter., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005) ("if there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act."). *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022

16

(9th Cir. 2008) (holding that "claims under the Magnuson–Moss Act stand or fall with [the] express and implied warranty claims under state law"); *Laing v. Volkswagen of Am., Inc.,* 949 A.2d 26, 37-38 (Md. Ct. Spec. App. 2008) (same).

In conformity with the Court's decision dismissing Counts 1, 4, 7, 9 and 10 (breach of express and implied warranty claims) without prejudice, the Court likewise DISMISSES Counts 2 and 13, the MMWA claims, WITHOUT PREJUDICE to refiling in a Second Amended Class Action Complaint, to be filed within 30 calendar days of the date of this Decision and Entry.

### B. Negligent Misrepresentation (Count 14)

Count 14 of the Amended Class Action Complaint asserts a claim of negligent misrepresentation on behalf of the nationwide class. Plaintiffs allege that Whirlpool made false representations about the peak horsepower capabilities of the Blenders and that Whirlpool knew or should have known that they were false and misleading. Plaintiffs also allege that Whirlpool intended that consumers would rely on the misrepresentations, and that the class members justifiably did so in purchasing the Blenders, suffering damages as a result.

Whirlpool argues that this claim must be dismissed because Plaintiffs have failed to identify which state's law governs this nationwide claim. Whirlpool notes that the laws of Maryland, Wisconsin, New York, Illinois and Ohio vary significantly as to elements of a claim of negligent misrepresentation, and Virginia does not recognize any such cause of action at all. *See Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352 (E.D.N.Y. 2016) (noting the "significant variations between the

17

laws of the fifty states" on claims of negligent misrepresentation); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101-02 (C.D. Cal. 2012) (same). Whirlpool maintains that, unless and until Plaintiffs identify which state's law governs this claim, it is impossible to discern whether the factual allegations are sufficient to state a plausible claim for relief. The Court agrees.

Plaintiffs note that courts have certified a nationwide negligent misrepresentation class in cases where there has been a uniform misrepresentation. In support, they cite to *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 509 (D. Utah 2017), and *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569-70 (S.D.N.Y. 2014). In both of those cases, however, the relevant issue was whether common issues predominated such that class certification was appropriate, not whether plaintiffs had stated a plausible claim for relief. Moreover, in both of those cases, the court was evaluating claims arising under the law of one particular state—Utah or New York. *Roberts* and *Ebin* are therefore inapposite.

The Court agrees with Whirlpool that, because Plaintiffs have not identified which state's law would apply to the nationwide class, it is currently impossible to determine whether they have stated a plausible claim for relief. Accordingly, the Court SUSTAINS Whirlpool's Motion to Dismiss, but DISMISSES Count 14 WITHOUT PREJUDICE to refiling within 30 calendar days of the date of this Decision and Entry.

### C.    Statutory Consumer Fraud (Counts 15-20)

Counts 15 through 20 of the Amended Class Action Complaint assert claims under the consumer fraud statutes of Maryland (Count 15), Virginia (Count 16), Illinois (Count 17), Wisconsin (Count 18), New York (Count 19), and Ohio (Count 20).  Plaintiffs allege that Whirlpool's representations on the packaging, that the Blenders have a "3.0 Peak HP Motor" or a "3.5. Peak HP Motor," are deceptive and misleading because they do "not reflect the Blenders' actual horsepower output while in household operation."  Doc. #17, PageID#194.  Plaintiffs further allege that these statements were material to a reasonable consumer and designed to affect consumer decisions, and that Whirlpool's conduct substantially injured actual and potential consumers.

Whirlpool alleges that the statutory fraud claims are subject to dismissal because: (1) Plaintiffs do not plead facts sufficient to plausibly allege that Whirlpool's statements could mislead or deceive a reasonable consumer; (2) Counts 15-18 and 20 do not plead sufficient facts under Fed. R. Civ. P. 9(b) to plausibly allege reliance and/or causation; and (3) Plaintiff Anderson's Ohio claim (Count 20) fails to identify a decision or rule finding the alleged conduct to be deceptive or unconscionable.  The Court rejects each of these arguments.

### 1.  Sufficiency of Allegations that Representations Could Mislead or Deceive a Reasonable Consumer

Although consumer fraud statutes vary among the states in some respects, all require that plaintiffs "allege conduct that plausibly could deceive a reasonable

consumer." *In re 100% Grated Parmesan Cheese Mktg. and Sales Prac. Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (collecting cases). *See also Tomasino v. Estee Lauder Co. Inc.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014); *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 558 (D. Md. 2012); *Hamilton v. Boddie-Noell Enter., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001); *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 602 (E.D. Wis. 2019); *Shumaker v. Hamilton Chevrolet, Inc.*, 2009-Ohio-5263, 920 N.E.2d 1023, at ¶ 19 (Ohio Ct. App. 2009).  In its Motion to Dismiss, Whirlpool argues that Plaintiffs do not plead facts sufficient to state a plausible claim that Whirlpool's representations about the horsepower of the Blenders' motors could mislead or deceive a reasonable consumer.  The Court disagrees.

Whether a particular representation could deceive a reasonable consumer is typically a question of fact to be decided by a jury.  Only in "rare situations," where the alleged violation is "simply not plausible," will a court be able to decide this issue on a motion to dismiss.  *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *York v. Andalou Nats., Inc.*, No. 16-CV-894, 2016 WL 7157555, at *2 (S.D. Ill. Dec. 8, 2016) ("whether a reasonable consumer would be deceived by a product label or a reasonable consumer's understanding of the term 'natural' are questions of fact that cannot be resolved pursuant to a motion to dismiss"); *Eidelman v. Sun Prod. Corp.*, No. 16-cv-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) ("whether an interpretation is

unreasonable as a matter of law is generally reached [on a motion to dismiss] only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic."); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2014 WL 3557189, at *12 (M.D. Pa. July 17, 2014) ("only in the clearest of cases is it proper for a court to make a determination that a reasonable consumer is not likely to be misled at the motion[-]to[-]dismiss stage").  This is not one of those rare cases in which the question can be decided as a matter of law.

Whirlpool argues that the question of whether a particular representation could deceive a reasonable consumer must be viewed "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).  "[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

The First Amended Complaint includes photographs of the boxes in which the Blenders are packaged.  On the box for the High Performance Series Blender, there is an asterisk next to the reference to a "3.0 Peak HP Motor."  Likewise, on the box for the Pro Line Series Blender, there is an asterisk next to the reference to a "3.5 Peak HP Motor."  Each asterisk directs the consumer to "[s]ee the enclosed Use and Care Guide for more details regarding blender use and performance." Doc. #17, PageID##204-05.  As previously noted, the Use and Care Guides distinguish between the peak horsepower of the Blender's motor and the

21

horsepower output in the pitcher of the Blender. Doc. #21-1, PageID#339.

Whirlpool likewise argues that information available on the KitchenAid website

would have dispelled any notion that the actual horsepower delivered to the pitcher

of the Blenders was equal to the peak horsepower listed on the boxes.

Whirlpool cites to several cases in which courts have dismissed consumer

fraud claims after finding that disclaimers on the product packaging cured any

alleged deceit. For example, in *100% Grated Parmesan Cheese*, the court held

that the statement that the product contained "100% Grated Parmesan Cheese"

was ambiguous; however, the "readily accessible ingredients panel" on the

product, which disclosed the presence of non-cheese ingredients, cured any

ambiguity and defeated the consumer fraud claim. 275 F. Supp. 3d at 922-23.

Likewise, in *Beardsall v. CVS Pharmacy, Inc.*, No. 16C6103, 2019 WL 1168103

(N.D. Ill. March 13, 2019), the court held that the representation that the product

was "Aloe Vera 100% Gel" was ambiguous. However, an asterisk on the label led

the consumer to other language on the back of the bottle stating that it also

contained "stabilizers and preservatives," thereby dispelling any notion that the

product contained only aloe vera, and warranting dismissal of the consumer fraud

claim. *Id.* at **4-5.

Whirlpool further argues that such disclaimers need not appear on the face

of the product packaging; instead, the disclaimers may appear in information

included inside that packaging. In support, Whirlpool cites to *Ballas v. Virgin*

*Media, Inc.*, 856 N.Y.S.2d 22 (Table) (N.Y. Sup. Ct. Dec. 6, 2007), and *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 674 (S.D.N.Y. 2012).

*Ballas* involved a claim that a cell phone service provider failed to inform its customers selecting the 18-cents-per-minute plan that, in order to maintain service, they would be required to deposit additional funds into their account, *i.e.*, "top it up," every ninety days even if the account still had a positive balance. This requirement did not appear on the exterior packaging of the cell phone, but was available on the website and contained in the Terms of Service booklet contained in the package. The court held that, because the allegedly deceptive "topping up" requirement was "fully revealed" in that booklet, the consumer fraud claim was subject to dismissal. 856 N.Y.S.2d 22, at *5.

*Preira* stemmed from the purchase of a prepaid Visa or MasterCard gift card. The gift card packaging directed consumers to the enclosed Cardholder Agreement containing Terms and Conditions of use. The Terms and Conditions warned that some merchants may not allow cardholders to conduct split transactions, whereby a consumer would pay a portion of the bill with the gift card and the remainder with some other form of payment. Although this sometimes resulted in the consumer being left with a balance that was too small to use, the consumer could return the gift card to the company and would be given a check for the remaining balance. The court therefore found that plaintiff had failed to state a plausible claim under New York's consumer fraud statute, because the alleged deception resulted in no actual injury separate and apart from the alleged deception. 885 F.

Supp. 2d at 676-79.  Citing *Ballas*, the court also noted that all of the terms of the gift card were fully disclosed prior to plaintiff's first use of the gift card.  *Id.* at 680.

Whirlpool argues that, as in *Ballas* and *Preira*, its representations concerning the peak horsepower of the Blenders' motors must be read in conjunction with disclaimers included in the Use and Care Guides and on the KitchenAid website.  Whirlpool's argument, however, is premature.  Although these disclaimers may later be considered on a motion for summary judgment, the Court, for reasons previously discussed, will not consider matters outside the pleadings in conjunction with the motion to dismiss.  *See infra* at pages 14-15.[10]

Given the Court's inability, at this juncture, to consider the specific disclaimers that Whirlpool argues "would have dispelled any professed deception," Doc. #21, PageID#314, Whirlpool's reliance on *100% Grated Parmesan Cheese*, *Beardsall*, *Ballas* and *Preira* is misplaced.

Moreover, even if the Court were to consider these disclaimers, it remains unconvinced that this is the rare case in which it can be determined as a matter of law that the allegedly deceptive representations would not have misled a

---

[10]   The Amended Class Action Complaint does refer to one web page that discusses the "Powerful 3.5 Peak HP Motor" of the Pro Line Series Blender. Double asterisks direct the reader to the following statement: "When testing the actual blender power output at the blade using a dynamometer, a machine laboratories use to measure mechanical power, this KitchenAid blender with its heavy duty motor and advanced motor control board, produces more power than the leading competitors."  Doc. #17, PageID#215.  However, nothing in this statement necessarily alerts the reader that the "actual blender power output at the blade" is anything other than the 3.5 HP advertised on the box.

reasonable consumer. As the court noted in *In re Shop-Vac Marketing and Sales Practices Litigation*, 2014 WL 3557189, at \*\*11-12, most consumers have little knowledge of achievable horsepower levels in a particular appliance. Plaintiffs maintain that reasonable consumers would fail to appreciate the distinction between the motor's peak horsepower, as advertised on the box, and the horsepower available inside the pitcher when the blender is in use. In the Court's view, under the circumstances presented here, a jury will have to determine the extent to which any disclaimers included in the Use and Care Guides cure the allegedly misleading representation of peak horsepower in the motors.

Accordingly, the Court rejects Whirlpool's argument that Plaintiffs have failed to plead facts sufficient to plausibly allege that Whirlpool's statements could mislead or deceive a reasonable consumer.

### 2. Sufficiency of Allegations of Reliance and Causation

Federal Rule of Civil Procedure 9(b) governs the pleading of claims of fraud. It provides, in relevant part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Citing Rule 9(b), Whirlpool argues that Counts 15-18 and 20, the consumer protection claims brought under Maryland, Virginia, Illinois, Wisconsin and Ohio law, must be dismissed because they do not plead sufficient facts under the heightened pleading standards of Rule 9(b) to plausibly allege reliance and/or causation. *See Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 845 (E.D. Va. 2015); *Scott v. GlaxoSmithKline*

*Consumer Healthcare, L.P.*, No. 05C3004, 2006 WL 952032, at *3 (N.D. Ill. Apr. 12, 2006); *Miller v. Vonage Am., Inc.*, No. 14-cv-379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015); *Ferron v. Zoomego, Inc.*, No. 2:06-cv-751, 2007 WL 1974946, at *3 (S.D. Ohio Jul. 3, 2007) (Marbley, J.).

In order to succeed on their consumer fraud claims, Plaintiffs must prove that the alleged misrepresentation was material in that it substantially influenced their decision to purchase this particular product. *See, e.g., Artis v. T-Mobile USA, Inc.*, No. 18-2575, 2019 WL 1427738, at *3 (D. Md. Mar. 29, 2019); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (discussing Illinois law); *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012) (Frost, J.).

Here, Plaintiffs allege that they each reviewed the packaging, including Whirlpool's representations concerning the horsepower of the Blenders, prior to making their purchases.  Plaintiffs Nathan and Smith further allege that they read product descriptions and reviews of the Blenders.  Doc. #17, PageID##195-96.  Each alleges that, absent the misleading horsepower representations, they would not have purchased the Blenders or that they would have paid substantially less for them than they did.

Whirlpool, however, argues that this is not enough, and that Plaintiffs must plead specific facts to support these claims.  For example, Whirlpool suggests that Plaintiffs should indicate which other blenders they considered but did not buy, the horsepower of those other blenders, and how much those other blenders cost.

In support, Whirlpool cites six cases, in which courts dismissed consumer fraud claims based on the plaintiff's alleged failure to adequately plead reliance on the alleged misrepresentation. *Willis v. Bank of Am. Corp.*, No. 13-02615, 2014 WL 3829520, at *22 (D. Md. Aug. 1, 2014); *Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-cv-00030, 2017 WL 354251, at *14 (W.D. Va. Jan. 23, 2017); *Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 852 (N.D. Ill. 2010); *Lantz v. Am. Honda Motor Co., Inc.*, No. 06C5932, 2007 WL 1424614, at *10 (N.D. Ill. May 14, 2007); *Ball v. Sony Elecs. Inc.*, No. 05C307, 2005 WL 2406145, at *4 (W.D. Wis. Sep. 28, 2005); *Scheetz v. Consumer Rsch. Corp.*, No. 2:07-cv-207, 2008 WL 11350242, at *4 (S.D. Ohio June 23, 2008) (Watson, J.).

Having read these cases, the Court finds that none requires dismissal of Plaintiffs' claims.  Unlike the plaintiffs in the cases cited by Whirlpool, Plaintiffs have alleged the content of the misrepresentation, who made the misrepresentation, when and where the misrepresentation was made, why it was misleading and how it induced them to purchase the Blenders.  This is all that is required to satisfy the heightened pleading requirements of Rule 9(b).  Whirlpool has cited no cases in which the court has required plaintiffs to identify what other purchase options were considered but not chosen.  Accordingly, the Court rejects Whirlpool's claim that Counts 15-18 and 20 fall short of what is required by Rule 9(b).

### 3. Ohio Claim (Count 20)

Count 20 involves a consumer fraud claim brought by Plaintiff Judith Anderson on behalf of an Ohio class, alleging violations of Ohio's Consumer Sales Practices Act ("OCSPA"). It is a violation of the OCSPA to represent that "the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have." Ohio Rev. Code Ann. § 1345.02(B)(1).

With respect to class action claims of consumer fraud, OCSPA provides as follows:

> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by *rule adopted* under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice *determined by a court of this state* to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may . . . recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

Ohio Rev. Code § 1345.09(B) (emphasis added).

Whirlpool argues that Count 20 is subject to dismissal because Plaintiff Anderson does not identify any rule or decision declaring the relevant alleged conduct to be deceptive or unconscionable under Ohio law.

As a threshold issue, the Court must determine whether Whirlpool's argument is premature. Plaintiffs maintain that this issue is better addressed in the context of a motion for class certification or a motion for summary judgment. In

support, they cite to *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 684 F. Supp. 2d 942, 948-49 (N.D. Ohio 2009), *Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, at *4 (N.D. Ohio Oct. 25, 2016), and *In re Insulin Pricing Litigation*, No. 3:17-cv-699, 2019 WL 643709, at *21 (D.N.J. Feb. 15, 2019) (construing the OCSPA).

*Chapman* and *In re Insulin Pricing Litigation* each relied on *Whirlpool* in holding that arguments concerning the adequacy of notice under § 1345.09(B) are inappropriate at the motion-to-dismiss stage. However, in *Whirlpool*, the court held that dismissal of the OCSPA claim was inappropriate because: (1) the plaintiffs had asserted individual *and* class action claims under OCSPA, and a finding that the notice to the defendant was insufficient under R.C. § 1345.09(B) as to the class claims would not prevent the plaintiffs from moving ahead with their individual claims; and (2) the law, at that time, was unclear concerning whether the class action limitations set forth in R.C. § 1345.09(B) applied to actions filed in federal court. *Whirlpool*, 684 F. Supp. 2d at 948-49.

Here, in contrast, Plaintiff Anderson has not asserted any individual claim under the OCSPA. *See* Doc. #17, PageID#263 ("Plaintiff Anderson and the Ohio Class bring this count as a class action pursuant to Rule 23 . . . "). Accordingly, a finding that notice was insufficient under § 1345.09(B) would be dispositive with respect to this claim. Moreover, as Judge Smith noted in *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677 (S.D. Ohio 2012), it has now been determined that the class action limitations in § 1345.09(B) do apply to OCSPA

claims filed in federal court. *Id.* at 693 (citing *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 748-49 (N.D. Ohio 2010)). Accordingly, the Court finds no reason to delay addressing the issue of the sufficiency of Plaintiffs' allegations with respect to Count 20.

In *Delahunt v. Cytodyne Technologies*, 241 F. Supp. 2d 827, 837 (S.D. Ohio 2003), Judge Marbley held that "[f]or class certification to be proper, the prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated [the CSPA]." The Ohio Supreme Court has held that "[c]ases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Marrone v. Philip Morris USA, Inc.*, 2006-Ohio-2869, 850 N.E.2d 31, ¶21.

In the Amended Class Action Complaint, Plaintiffs allege as follows:

410. Defendant was on notice before the filing of this suit that its conduct in misleading consumers about the Blenders' characteristics was a violation of the Ohio Act. *See Lyons v. Brown*, 332 N.E.2d 380, 384 (Ohio Com. Pl. 1974) (concluding that defendant violated the Ohio Act by misleading consumers about the quality of appliances); *Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, at *4 (N.D. Ohio Oct. 25, 2016) (finding that *Lyons v. Brown* was sufficient to give defendant pre-suit notice that misleading statements about an appliance's characteristics had been found to violate the Ohio Act).

411. Defendant was also on notice before the filing of this suit that its conduct in misleading consumers about the Blenders' characteristics was a violation of the Ohio Act because the actions taken by Defendant are "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the [Ohio] Revised Code before the consumer

30

transaction on which [this] action is based." Ohio Revised Code § 1345.09(B). Specifically, Ohio Administrative Code § 109:2-4-02(A)(1) states:

> It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

Doc. #17, PageID##265-66.

The Court turns first to Plaintiffs' reliance on *Lyons* and *Chapman.* The *Lyons* case involved a business that sold and repaired used appliances. The court found that Mr. Lyons represented to consumers that his used appliances "had performance characteristics, uses, and benefits which, in fact, they did not have," 332 N.E.2d at 383, and that such representations "constitute deceptive acts and practices in violation of R.C. 1345.02(A) [and] R.C. 1345.02(B)(1)." *Id.* at 385.

*Chapman* involved the sale of new appliances. More specifically, plaintiff alleged that defendant misled him about the safety features of the pressure cooker he purchased. The court denied the motion to dismiss the OCSPA claim, finding that the *Lyons* case, which also involved misleading statements about the quality and operation of the appliances at issue, satisfied the § 1345.09(B) notice requirement. *Chapman*, 2016 WL 6216135, at *4.

Whirlpool, however, argues that neither *Lyons* nor *Chapman* satisfies the requirement of § 1345.09(B).[11]  The Northern District of Ohio has found that, to the extent that *Lyons* held that representing that a product has benefits it does not have violates the CSPA, this "provides no more guidance to the Defendants than does the statute itself."  *Eisenberg v. Anheuser Busch, Inc.*, 1:04cv1081, 2006 WL 290308, at *10 (N.D. Ohio Feb. 2, 2006), *overruled on other grounds by Alston v. Advanced Brands & Importing Co.*, 494 F.3d 562 (6th Cir. 2007).  Then, in *Savett v. Whirlpool Corp.*, No. 12cv310, 2012 WL 3780451, at *4 n.3 (N.D. Ohio Aug. 31, 2012), a case involving a new washing machine, the court held that *Lyons* did not satisfy the statutory requirement because *Lyons* involved *used* appliances, a "different industr[y]."

Having read the relevant cases, this Court believes that *Chapman* was correct in holding that the *Lyons* case satisfies the § 1345.09(B) notice requirement with respect to misleading statements made in connection with the sale of appliances.  True, *Lyons* involved used appliances rather than new ones.  Nevertheless, both cases involved the same industry, and the defendant in *Lyons* was alleged to have engaged in conduct very similar to Whirlpool's alleged

_____

[11]  As to *Chapman*, Whirlpool argues that a "decision of a federal court sitting in Ohio is insufficient to qualify as an Ohio court decision providing prior notice under the OCSPA."  *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 648 (N.D. Ohio 2012).  Plaintiffs respond that *Chapman* is not cited as itself providing notice, but rather as a case recognizing that *Lyons* provides sufficient notice.

conduct, *i.e.,* making misleading statements, on which customers relied, "regarding the quality and operation" of the appliances.  332 N.E.2d at 384.

This Court finds that *Lyons* put Whirlpool "on notice that the specific conduct at issue violated [the CSPA]." *Delahunt*, 241 F. Supp. 2d at 837.[12] Accordingly, the Court overrules Whirlpool's motion to dismiss Count 20.

### D.    Unjust Enrichment (Counts 21-25)

Counts 21 through 25 assert claims of unjust enrichment on behalf of the Maryland class (Count 21), the Virginia class (Count 22), the Illinois class (Count 23), the New York class (Count 24), and the Wisconsin class (Count 25). Plaintiffs generally allege that Whirlpool's misrepresentations concerning the horsepower of the Blenders enabled Whirlpool to receive more money for the Blenders than it would have otherwise received, that Plaintiffs paid more money than they should have for the Blenders, that Whirlpool knowingly received this windfall, that the misrepresentations had no legitimate business purpose, and that the class members lack an adequate remedy at law.  Plaintiffs maintain that, because allowing Whirlpool to retain the additional revenue would be unjust, it should be required to disgorge the excess revenue.  Plaintiffs' unjust enrichment claims are pled in the alternative, meaning that if Plaintiffs are unable to recover on

---

[12]    The Court need not reach the issue of whether Ohio Admin. Code § 109:4-3-02(A)(2), dealing with "Exclusions and limitations in advertisements," also satisfies § 1345.09(B)'s notice requirement.  Nevertheless, the Court tends to agree with Whirlpool that this regulation does not appear to apply to purported misrepresentations related to *product performance*.

any legal theory, they seek to recover under the equitable theory of unjust enrichment.

Fed. R. Civ. P. 8(a)(3) specifically allows plaintiffs to seek "relief in the alternative or different types of relief." Nevertheless, this rule is sharply curtailed in cases involving claims of breach of express warranty. If the parties' relationship is governed by an express warranty, and neither the *existence* of the warranty nor the *validity* of the warranty is in dispute, a claim of unjust enrichment is not available under the laws of Maryland, Virginia, Illinois, New York or Wisconsin. *See FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) ("a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties"); *Vollmar v. CSX Transp., Inc.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("Unjust enrichment claims can arise only where . . . there is no express contract"); *In re Porsche Cars*, 880 F. Supp. 2d at 850-51 ("Illinois courts adhere to the general rule that, where a valid contract covers the subject matter in dispute, an unjust enrichment claim is not appropriate"); *ImagePoint, Inc. v. JPMorgan Chase Bank, N.A.*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014) ("where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract, the unjust enrichment claim must be dismissed"); *Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1062-63 (E.D. Wis. 2010) ("claims for equitable relief fail as a matter of law if the parties entered into a valid contract to govern their relationship").

34

In its Motion to Dismiss, Whirlpool argues that because the parties' relationship is governed by the Blenders' ten-year limited warranty, and neither the existence nor the validity of that warranty is in dispute, a quasi-contractual claim of unjust enrichment is not available to any of the proposed classes. Whirlpool admits that the limited warranty is valid and could have formed the basis for a breach-of-contract claim had Whirlpool actually breached the agreement. Whirlpool simply denies that there was a breach, given that the warranty includes not only the representations concerning the peak horsepower of the Blenders' motors, as stated on the product packaging, but also statements included in the Use and Care Guides and on the website, distinguishing between the horsepower output of the motors and the horsepower output available inside the Blenders' pitchers.

Plaintiffs argue that because Whirlpool denies that the horsepower representations contained on its product packaging constitute the full scope of the warranty, express or implied, they may plead claims of unjust enrichment in the alternative. The Court disagrees.

Because there is a valid and enforceable contract, and the subject matter of the unjust enrichment claims is covered by that contract, the unjust enrichment claims are not viable. *ImagePoint*, 27 F. Supp. 3d at 516. As the court held in *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013), "[h]aving chosen to sue for breach of warranty, plaintiff cannot plead an alternative quasi-contract claim in the hope[] of modifying the terms of that warranty." Likewise, in *Porsche Cars*, 880 F. Supp. 2d at 850, the court,

interpreting Illinois law, held that "[a] plaintiff cannot use an unjust enrichment claim to unilaterally alter the terms of a valid contract."

Given that neither the existence nor the validity of Whirlpool's express warranty is in dispute, the Court finds that Plaintiffs cannot proceed on their alternative claims of unjust enrichment.  The Court therefore SUSTAINS Whirlpool's Motion to Dismiss Counts 21-25, the claims of unjust enrichment, and DISMISSES these Counts WITH PREJUDICE.[13]


## IV.    Conclusion

For the reasons set forth above, Defendant Whirlpool's Motion to Dismiss Plaintiffs' Amended Class Action Complaint, Doc. #21, is SUSTAINED IN PART and OVERRULED IN PART.

The Court DISMISSES Counts 3, 5, 6, 8, 11, 12, 21, 22, 23, 24 and 25 WITH PREJUDICE.

The Court DISMISSES Counts 1, 2, 4, 7, 9, 10, 13 and 14 WITHOUT PREJUDICE, and grants Plaintiffs leave to file a Second Amended Class Action Complaint within 30 days of the date of this Decision and Entry.

---

[13]    The Court does not reach Whirlpool's alternative arguments that Count 25 must be dismissed because Plaintiff Johnson purchased his Blender from a third-party retailer and conveyed no benefit directly on Whirlpool, or that Count 23 must be dismissed because it is based on the same allegations as Plaintiff Smith's Illinois Consumer Fraud and Deceptive Business Practices Act claim.

Plaintiffs may proceed on Counts 15, 16, 17, 18, 19 and 20 as currently pled.

Date: October 2, 2020

(tp -per Judge Rice authorization after his review)

WALTER H. RICE
UNITED STATES DISTRICT JUDGE